Jones, J.
 

 These plaintiffs in error will be referred to as the defendants, who seek to invoke the cloak and protection of the immunity provisions contained in Article I, Section 10 of the state Constitution and in the Fifth Amendment of the federal Constitution, which provide that no “person shall be compelled, in any criminal case, to be a witness against himself.” It is the contention of the state that Section 13444-4, General Code (113 Ohio Laws, 186), purports to grant complete immunity from prosecution for nine separate misdemeanors, six of which pertain to offenses concerning gambling, and three to intoxicating liquors. The pertinent part of the section reads as follows: “If a person called to testify on behalf of the state before a magistrate, the grand jury or court, upon
 
 *577
 
 complaint, information, affidavit or indictment, discloses a fact tending to incriminate himself as to a misdemeanor hereafter named, he shall be discharged from liability for prosecution or punishment for such offense, viz.” We are confronted with the construction of the foregoing section of the General Code for the purpose of determining whether it applies to the testimony and disclosures of a witness before a grand jury where no written complaint, charge or accusation had been made against anyone, and none had been lodged before any court or magistrate. No one doubts the power of a grand jury to investigate, on its own initiative, crimes and offenses committed within the county, and its prerogative so to do is not impinged upon by this or any other statute. But here we have a statute embracing plain and unambiguous terms. It gives immunity to a witness only when he is called to testify on behalf of the state “upon
 
 complaint, information, affidavit
 
 or indictment.” There is no question that informations, affidavits and indictments require legal process and must be couched in written form, charging an individual with a specific offense and apprising a court or magistrate of its nature. The term “complaint” is grouped with the other terms, viz.: “information, affidavit or indictment,” which do require formal, legal process and, being included in that group, should be given the same legal meaning.
 

 Had an accused person been bound over by a magistrate, under the provisions of Section 13433-10, General Code, it might be plausibly argued that the grand jury was acting upon complaint initiated by affidavit. However, that feature is not presented in this record. The grand jury is an inquisitorial body. In this instance, there could be no “complaint” until after the investigation was concluded by the grand jury. In law, the word “complaint” connotes a formal written charge of some specific offense and alleges that a crime was committed by a specified offender. In defining the
 
 *578
 
 word “complaint” when used in legal proceedings, Webster’s New International Dictionary defines it as follows:
 
 “Law.
 
 A formal allegation or charge against a party, made or presented to the appropriate court or officer, as for a wrong done or a crime committed.” In “Words and Phrases” is found the following definition of the same term: “A ‘complaint’ is a form of legal process, which consists of a formal allegation or charge against a party, made or presented to the proper court or officer, as for a wrong done or a crime committed.”
 

 The state of Iowa had a provision in its Code that “no prosecution for adultery can be commenced but on the
 
 complaint
 
 of the husband or wife.” In
 
 State
 
 v.
 
 Stout,
 
 71 Iowa, 343, 32 N. W., 372, the prosecution contended that testimony given by the wife before a grand jury was sufficient to constitute a complaint, but the Supreme Court, in its syllabus, held: “The mere fact that a .wife, in obedience to a subpoena, testifies before the grand jury upon the question of her husband’s adultery, does not constitute a complaint by her against her husband” within the meaning of said section. In the course of the opinion, the judge said: “In the present case, the court instructed the jury that, if the wife of the defendant went before the grand jury as a witness, even though she did so in obedience to a subpoena, and testified as a witness, this would be sufficient to sustain the averment in the indictment * * * that the prosecution was commenced on the complaint of the defendant’s wife. It seems to us that this instruction conflicts with the instruction which was approved in
 
 State
 
 v.
 
 Donovan
 
 [61 Iowa, 278, 16 N. W., 130], above cited. Besides this, a complaint we understand to be a formal allegation or charge, preferred by some one against another, to an appropriate court or officer.”
 

 Without further extending this opinion it may be stated that when complaints are required in criminal
 
 *579
 
 prosecutions they serve the same purpose as do affidavits before a magistrate and must bear the stamp of a written accusation. In 16 Corpus Juris, 286, Section 492
 
 et seq.,
 
 citing many cases in its support, the text states: “The term ‘complaint’ is a technical one, descriptive of proceedings before magistrates. It is the preliminary charge or accusation against an offender, made by a private person or an informer to a justice of the peace or other proper officer, charging that accused has violated the law. * * * The term is used with reference to accusations not made by the grand jury or the state’s attorney. ’ ’
 

 In our own state, prosecutions for misdemeanors by information, in lieu of indictment, in our Common Pleas Courts, are provided for by Section 13437-34, General Code. This section distinctly stipulates that informations must have the same legal forms and sufficiency required of indictments. Prosecutions for gambling can only be instituted by affidavit, information or indictment which require written process. Ohio has provided no authority for such prosecutions by initiating unwritten, informal “complaints” — a practice which is unknown to our Code of Criminal Procedure. The terms “complaint” and “affidavit” are often used interchangeably, as in Section 13429-6, General Code; and if, in this instance, we should give the word
 
 complaint
 
 any vitality, we must necessarily construe it as meaning a written complaint initiated by way of affidavit, information or indictment; otherwise we must discard it altogether.
 

 In construing penal statutes, we must adhere to the well settled rule that they require a strict rather than a liberal construction. See annotations in 37 -Ohio Jurisprudence, 744, Section 420
 
 et seq.
 
 The Legislature has recognized this rule in criminal proceedings, as shown by its adoption of the latter clause of Section 10214, General Code, stipulating that the “section shall not be so construed as to require a liberal construction
 
 *580
 
 of provisions affecting personal liberty, relating to amercement, or of a penal nature.” Adhering to this rule, and giving to the term “complaint” its legal signification, we are in accord with the opinion of the majority of the Court of Appeals that, since there was no information, affidavit or indictment, nor any written complaint before the grand jury for investigation, the claimed immunity statute, Section 13444-4, General Code, does not, and was not intended to apply to proceedings like the instant one, and a majority of the members of the Court of Appeals so held. After so deciding, we are unable to comprehend why a majority of that court upheld the trial court’s order to answer all the questions, including some that were concededly self-incriminating.
 

 This court has held that the refusal of a witness to answer ■ a question on the ground that it would incriminate him is not conclusive, and he may be required to answer if the trial judge finds that his answer would not have the incriminating tendency claimed by the witness
 
 (McGorray, Sheriff,
 
 v.
 
 Sutter,
 
 80 Ohio St., 400, 89 N. E., 10, 131 Am. St. Rep., 715, 24 L. R. A. [N. S.], 165); and that the witness’ “claim of privilege is properly allowed by the court if from the circumstances of the particular case and the nature of the question asked, it appears there is reasonable ground to apprehend that his answer would have the effect claimed by him.”
 
 State
 
 v.
 
 Murray,
 
 82 Ohio St., 305, 92 N. E., 467. In the contempt hearing, the foreman of the grand jury testified that they were endeavoring to ascertain the participation of these witnesses in their gambling practices at the “Harvard” and “Thomas” Clubs. The questions asked of the witnesses were included in a series, some of which may have been harmless, but others were undoubtedly incriminating. For instance, they were asked whether they had any interest in the “Harvard Club” which was under investigation for gambling and whether
 
 *581
 
 they had “ever operated or assisted in the operation of any gambling devices in the Harvard Club at 42nd and Harvard in Cuyahoga County.” Certainly questions of that character or any other of the group connecting the witness with the gambling offenses under inquiry were undoubtedly incriminating, and two of the appellate judges so found. This the state admits in its brief, for it states: “The answers to at least some of these questions would undoubtedly have incriminated these witnesses and made them liable to a prosecution for the misdemeanor of gambling”, except for the provisions of the so-called immunity statute. If some of the questions were harmless and others self-incriminating, they should have been separated by the trial court, and the witness ordered to answer the non-incriminating but not to answer the incriminating questions found in the series of questions presented to the judge. But the judge did not do this. He ordered the witnesses to answer all of the questions, whether incriminating or otherwise. Had the court ordered the incriminating questions deleted from the series and had ordered the other questions which had no tendency of self-incrimination to be answered, the witnesses might have obeyed the order of the court and contempt proceedings would not have been necessary. But when the trial court ordered the entire series of questions to be answered, including those that were self-incriminating, the trial court erred.
 

 For the reasons stated, the judgments of the trial and appellate courts are reversed.
 

 Judgments reversed.
 

 Stephenson, Matthias and Day, JJ., concur.
 

 Weygandt, Ó. J., dissents.