**UNITED STATES of America and Revenue Officer B.D. Walling of the Internal Revenue Service**

v.

**William J. CATES.**

Civ. No. B–86–2328.

United States District Court, D. Maryland.

May 23, 1988.

Breckinridge L. Willcox, U.S. Atty., Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., Iryna A. Kwasny, Trial Atty., Washington, D.C., for plaintiffs.

William J. Cates, Derwood, Md., pro se.

WALTER E. BLACK, Jr., District Judge.

While the United States system of taxation is built on the principle of self-assessment and voluntary compliance with the Internal Revenue Code's rules and regulations by individuals, which necessarily relies upon "the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability," *United States v. Bisceglia,* 420 U.S. 141, 145, 95 S.Ct. 915, 918, 43 L.Ed.2d 88 (1975), tax protestors are no strangers to the Internal Revenue Service (IRS). For these protestors and others who attempt to outwit the system, the IRS is an integral and indispensable part of the enforcement of the revenue laws. *United States v. Fox,* 721 F.2d 32 (2d Cir.1983), (citing *United States v. Harrington,* 388 F.2d 520, 525 (2d Cir.1968)). Courts, however, have also recognized that in appropriate cases answers by an individual to questions surrounding a tax investigation or the supplying of requested documents may tend to incriminate, and the individual's Fifth Amendment rights would apply to such responses. *See, e.g., Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In recognizing such a privilege, the IRS is faced with the unfortunate reality that tax protestors, too, may assert their Fifth Amendment privilege against self-incrimination in response to questions and requests for documents, and that other methods of obtaining the information sought may have to be employed. This Court must now consider the very issue of whether the Fifth Amendment privilege against self-incrimination is properly raised in response to questions and document requests of the IRS by a self-employed physician who has not filed a processable tax return since 1979.

On March 4, 1986, two Internal Revenue Service summonses were issued and served on William J. Cates, directing him to appear before Revenue Officer B.D. Walling, or her delegate, at a designated place and time.[1] The summonses required Cates to

---

1. Section 7602(a) of the Internal Revenue Code of 1954 (IRC) provides:

     (a) Authority to summon, etc.—For the purpose of ascertaining the correctness of any re-

appear before the officer to give testimony and to bring documents and records in connection with an IRS investigation of his tax liability for the years 1977 through 1979 and 1980 through 1984.

Cates was to appear before Walling on March 17, 1986 and March 27, 1986, respectively. While Cates did in fact appear at both hearings, accompanied by a man holding a recording device, who identified himself as Throckmorton P. Gildersleeve,[2] questioning of Cates never took place. Walling explained to him and his companion that under IRS regulations unilateral recording of meetings between Revenue Officers and taxpayers was not permitted. She then asked him for the information sought in the summonses, to which he replied that he was asserting his rights under the Fourth and Fifth Amendments to the

Constitution. The interview was then terminated.

Petitioners, the United States of America and Walling, brought the instant proceeding pursuant to 26 U.S.C. §§ 7402(b)[3] and 7604[4] to require Cates to show cause why he should not comply with the summonses and to compel compliance with the summonses. Pursuant to Walling's declaration that Cates had not complied with either of the summonses as of June 11, 1986, this Court issued an order to show cause why Cates should not be compelled to obey the IRS summonses served on March 4, 1986. The matter came before the Court for hearing on March 27, 1987. Because of the problem with unilateral tape recording, a record had not been made on Cates' appearance before the IRS, the interview having been terminated before any questioning had occurred. The Court therefore entered

turn, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
    (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
    (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2.  The Court takes judicial notice of the fact that Throckmorton P. Gildersleeve was a character in the situation comedy "Fibber McGee and Molly" on old-time radio, as well as in "The Great Gildersleeve" on both radio and early television.

3.  IRC § 7402(b) provides:
    (b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdic-

tion by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

4.  IRC § 7604 provides:
    (a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.
    (b) Enforcement.—Whenever any person summoned under section 6420(e)(2), 6421(f)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

an order on March 27, 1987 requiring Cates to appear on April 27, 1987 before Walling pursuant to the summonses, assuming that the IRS would have a recording device available to avoid the problem encountered at the previous meeting. As expected, Cates appeared in response to the Court's order, but declined to answer any substantive questions asked by Walling, asserting his First and Fourth Amendment rights as well as his Fifth Amendment privilege against self-incrimination. Walling did not ask Cates for any of his records or documents reflecting his income for the years in question at this hearing.

A record having been established, and the issues raised by Cates' response to the show cause being ripe for consideration, the Court held a second hearing on the petition to enforce the summons on July 16, 1987. Counsel for the government further argued their position with respect to Cates' Fifth Amendment rights, and Cates, being unrepresented by counsel, chose to rely on his written submissions.

Although Cates asserted certain constitutional rights in addition to those under the Fifth Amendment, the primary focus of the papers submitted and oral argument was whether Cates could invoke his Fifth Amendment privilege against self-incrimination to prevent the production of his records relating to income for the years in question. Whether the privilege could be similarly asserted in response to the questions posed by the Revenue Officer was also addressed.

■ The Fifth Amendment privilege is a personal one, adhering to the person, and not the information that may tend to incriminate him, and Courts have long recognized the importance of preserving it inviolate. *See, e.g., Couch*, 409 U.S. at 327, 93 S.Ct. at 615; *Fisher*, 425 U.S. at 397, 96 S.Ct. at 1574. Courts have also acknowledged, both expressly and implicitly, that a routine tax investigation is a situation in which answers to questions posed by an agent of the IRS might tend to incriminate, allowing the Fifth Amendment privilege against self-incrimination to protect the individual from providing answers to such inquiries and, indeed, in some instances from the production of documents. *See Fisher*, 425 U.S. at 397, 96 S.Ct. at 1574 (concluding that the taxpayer's privilege is not violated by enforcement of a summons against the taxpayer's attorney since the taxpayer would not be compelled to do anything); *United States v. Daffin*, 653 F.2d 121 (4th Cir.1981) (documents possessed by a taxpayer's accountant are not subject to taxpayer's Fifth Amendment privilege); *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 316–317 (2d Cir.1979) (answers to questions in a routine tax investigation might tend to incriminate and Fifth Amendment rights apply to such answers, except that the privilege does not extend to corporations and similar organizations).

This line of cases allowing taxpayers to assert their Fifth Amendment privilege against self-incrimination seems to stem from the Court's decision in *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), where the petitioner had been convicted of fraud arising out of claims for tax refunds. Evidence admitted at trial and consisting of documents and oral statements obtained from the petitioner by a government agent, while the petitioner was in prison serving a state sentence for a separate crime, was determined to have been improperly admitted as the self-incriminating evidence was obtained without warning of the petitioner's right to be silent and right to counsel under the Court's ruling in *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In so holding, the Court rejected the government's arguments that these questions were asked as part of a routine tax investigation where no criminal proceedings had been brought and that petitioner had not been incarcerated by the officers questioning him, but instead was serving a sentence for an entirely separate offense. Although the Court recognized that a "routine tax investigation" may be commenced in a civil action for purposes other than criminal prosecution, the Court was also mindful of the fact that tax investigations frequently lead to criminal prosecutions, rejecting the contention

that *Miranda* warnings need not be given to a person in custody prior to questioning pursuant to a tax investigation. *Mathis*, 391 U.S. at 4, 88 S.Ct. at 1505.

The proposition that the Fifth Amendment prevents compelled production of documents over objection that the production might be incriminating has its origins in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). This was a civil forfeiture proceeding brought by the government against two partners for their attempt to import cases of glass without paying the required duty. Over the Fifth Amendment objection of the partners, the government was successful at trial in obtaining a court order directing the partners to produce an invoice evidencing such fraud. On appeal, the Supreme Court concluded that the invoice was inadmissible under the Fourth Amendment.[5] The Court went on to hold that an accused in a criminal case or the defendant in a forfeiture action could not be compelled to produce evidentiary documents without similarly violating the Fifth Amendment rights of the individual, providing that "a compulsory production of the private books and papers of the owner of goods sought to be forfeited ... is compelling him to be a witness against himself, within the meaning of the fifth amendment to the constitution." 116 U.S. at 634–635, 6 S.Ct. at 534; *Fisher*, 425 U.S. at 407, 96 S.Ct. at 1579.

■■■ The Court in *Boyd* spoke of the protection of privacy and was understood to provide that seizure of any private papers from the taxpayer for evidentiary purposes violated the Fourth Amendment and that such materials were inadmissible under the Fifth Amendment, *Fisher*, 425 U.S. at 407, 96 S.Ct. at 1579; however, some of the principles enunciated by the Court in *Boyd* have been limited by more recent decisions. The Fifth Amendment no longer proscribes the compelled production of every type of incriminating evidence, but

rather applies where the individual is compelled to make a testimonial communication, either through his words, or through the production of documents. Neither a partnership, a corporation, nor any other collective entity is shielded by the Fifth Amendment from the compelled production of the organization's records. *See, e.g., Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (individual cannot rely upon the Fifth Amendment privilege to avoid producing the records of a collective entity, in this case a partnership); *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); *O'Henry's Film Works, Inc.*, 598 F.2d 313. Moreover, the partners, corporate officers or agents of such entities are not shielded from the compelled production of documents belonging to the entity, even where they would incriminate the individual. *See O'Henry's Film Works, Inc.*, 598 F.2d 313; *Curcio*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed. 2d 1225.

■ *Boyd* has also been limited to the extent that the privilege does not provide protection to an individual's tax records that have been turned over to a third party. *See, e.g., Daffin*, 653 F.2d 121 (documents possessed by a taxpayer's accountant are not subject to the Fifth Amendment privilege); *Couch*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (a sole proprietor could not raise her Fifth Amendment privilege as to documents she had turned over to her accountant); *Fisher*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (a summons directed toward taxpayers' attorneys for production of documents prepared by the taxpayers' accountants and transferred to the attorneys in connection with an IRS investigation did not violate taxpayers' Fifth Amendment privilege).

■ Today, as always, the Fifth Amendment protects a person only against incrimination through one's own compelled testi-

---

5. The Court concluded that the Fourth Amendment applied to court orders in the nature of subpoenas duces tecum in the same manner as it applied to search warrants, *id.* at 622, 6 S.Ct. at 527, and that the Government may not seize an individual's documents or other property as

evidence under the Fourth Amendment unless it can show a greater proprietary interest in the property than can the individual to whom the property belongs, *id.* at 623–624, 6 S.Ct. at 528. *See also Fisher*, 425 U.S. at 405–406, 96 S.Ct. at 1578.

mony. *Fisher*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39. Also protected is the production of certain documentary evidence, but only if there is an element of personal compulsion present in obtaining a testimonial communication from the accused. *Couch*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed. 2d 548 (1973). The act of producing evidence pursuant to a subpoena may have such communicative aspects since compliance may prove the existence of the papers and their possession by the individual. *Fisher*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39.

■ Inherent in the decisions that have evolved over the years since *Boyd*, and explicit in the Supreme Court's most recent pronouncement of the privilege with respect to the production of an individual's tax records in his possession, is the principle that the contents of documents are not protected by the Fifth Amendment, regardless of whether they may incriminate the taxpayer. *See United States v. Doe*, 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed. 2d 552 (1984); *Fisher*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39. While the contents are not privileged, however, the act of producing the documents may be. *Doe*, 465 U.S. at 612, 104 S.Ct. at 1242.[6]

■ Turning now to this proceeding, Cates is a self-employed physician who has asserted his Fifth Amendment privilege in response to a summons requiring him to appear before a Revenue Officer to answer questions and provide documents. In order to obtain judicial enforcement of the summons, the Government must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already in the possession of the Commissioner, and that the administrative steps required by the Code have been followed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); *United States v. La-Salle National Bank*, 437 U.S. 298, 313–314, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978). The burden of showing abuse of the court's process to enforce the summons is on the taxpayer, *Powell*, 379 U.S. at 58, 85 S.Ct. at 255, and Cates has failed to make such a showing in this case. The Service's purpose in issuing the instant summons is to determine Cates' tax liability for the years he did not file a return. This has been held to be sufficient to uphold the Service's authority in issuing a summons. *United States v. Roundtree*, 420 F.2d 845 (5th Cir.1969).

This does not, however, prevent Cates from challenging the summons on any other appropriate ground, as he has done here, raising his Fifth Amendment privilege against self-incrimination. *Powell*, 379 U.S. at 58, 85 S.Ct. at 255. In response, the government makes the following arguments: first, that Cates' fear of self-incrimination is remote and speculative; second, that his blanket claim of the Fifth Amendment privilege to avoid the production of all records sought is inadequate; and third, that the Fifth Amendment does not excuse production of the summoned records here.

---

**6.** Where the act of producing the documents would involve testimonial self-incrimination, as the District Court in *Doe, In Re Matter of Grand Jury Empanelled March 19, 1980*, 541 F.Supp. 1 (D.N.J.1981), *aff'd*, 680 F.2d 327 (3d Cir.1982), *aff'd in part and rev'd in part, United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), found, the privilege applies. As noted by the Court in *Fisher*:

Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.

*Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581.
The District Court considering the issue in *Doe* similarly stated:

With few exceptions, enforcement of the subpoenas would compel [respondent] to admit that the records exist, that they are in his possession, and that they are authentic. These communications, if made under compulsion of a court decree, would violate [respondent's] Fifth Amendment rights.... The government argues that the existence, possession and authenticity can be proved without [respondent's] testimonial communication, but it cannot satisfy this court as to how that representation can be implemented to protect the witness in subsequent proceedings.

*Doe*, 541 F.Supp. at 3.

In support of its position that Cates' fear of incrimination is remote and speculative, the government points to the civil nature of the investigation which has, as its sole purpose, the acquisition of information to determine Cates' civil tax liability for the years 1977 through 1979 and 1980 through 1984. Indeed, the purpose may at this point be just that, but, as courts have recognized, routine tax investigations frequently lead to criminal prosecutions. *See Mathis*, 391 U.S. at 4, 88 S.Ct. at 1505. As this Court has indicated since the beginning of these proceedings, the incriminating nature of the responses to the questions asked and of the documents requested is readily apparent. Cates has failed to file a processable return since 1979, and it is likely that the case will be referred to the Justice Department for prosecution once information regarding Cates' tax liability is obtained. The Court has before it a transcript of the questions asked by Walling, all of which related to Cates' income and his medical practice and would have been incriminating if answered, in light of his failure to file returns since 1979. The government's reliance upon the fact that the case has not been referred for prosecution in support of its position is misplaced; once the IRS has referred a case to the Department of Justice for potential prosecution, no summons can be enforced. *Daffin*, 653 F.2d 121 (citing *LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed. 2d 221). The government's position regarding the remote and speculative nature of Cates' fear of incrimination is without merit.

■ The government next argues that there is no justification for Cates' blanket invocation of the Fifth Amendment privilege. The established rule is that a taxpayer must appear for questioning and, as to each question posed or document requested, determine whether to raise the privilege. *Roundtree*, 420 F.2d at 852. Cates did not, however, invoke a blanket claim, but rather raised his privilege in response to each question concerning his income and medical practice and, at the first meeting, in response to a request for documents. As the Court has already indicated, a record was established, and each of the questions posed, excluding the request for his name and address, had potentially incriminating responses. Cates properly raised his Fifth Amendment privilege in response to each question. The government claims that Cates invoked a blanket claim of privilege without specifying particular documents to which the privilege might apply. The Court notes that Walling failed to request the documents sought in the summons at the time of the second hearing, but is confident that all such documents would have been incriminating and subject to Cates' Fifth Amendment privilege, as they would presumably relate to his tax liability for the years at issue.

It is the government's final position that the Fifth Amendment does not excuse the production of the summoned documents here, relying on *Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552, for the proposition that the contents of the documents sought are not privileged. With respect to the act of production, the government argues that the documents, which principally include W–2 forms, Forms 1099, employees' earning statements, and records of deposits to bank accounts, do not fall into the categories of documents for which the act of production may be privileged, as they are prepared by third parties and would be authenticated by someone else.

■ At the outset it should be noted that Cates is a sole proprietor and, as such, is entitled to assert his Fifth Amendment privilege against self-incrimination, rather than produce the documents, notwithstanding the decisions which reject the assertion of the privilege on behalf of a collective entity or by an agent of such entity. *See Bellis*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed. 2d 678; *Curcio*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225; *O'Henry's Film Works, Inc.*, 598 F.2d 313. A sole proprietorship has no legal existence apart from its owner, and the compelled production of his private or business records implicates his Fifth Amendment privilege. *In re Grand Jury Empanelled March 19, 1980*, 680 F.2d 327 (3d Cir.1982), *aff'd, Doe*, 465 U.S.

605, 104 S.Ct. 1237, 79 L.Ed.2d 552; *Fox*, 721 F.2d 32.

The Court agrees that the Supreme Court's decision in *Doe*, where the issue considered was the extent to which the Fifth Amendment privilege protects the compelled production of business records belonging to a sole proprietorship, is determinative of the issues presented by Cates' assertion of his Fifth Amendment privilege. Applying the rationale underlying the decision in *Fisher*, where the Court stated:

> [T]he Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled communications.... The accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else.

*Id.* at 425 U.S. at 409–410, 96 S.Ct. at 1580, the *Doe* Court concluded that the contents of records which were not prepared involuntarily by Cates and which were in his possession are not privileged. As in *Doe*, Cates did not contend that he prepared the summoned documents involuntarily. Based on the rationale of *Doe*, this Court concludes that the contents of the documents are not privileged under the Fifth Amendment. *Doe*, 465 U.S. at 612, 104 S.Ct. at 1242.

Although the contents of such documents may not be privileged, the act of producing them may be. *See, e.g., Doe* at 612, 104 S.Ct. at 1242; *Curcio*, 354 U.S. at 125, 77 S.Ct. at 1150; *Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581. Compelling one in possession of a document to produce it may have testimonial aspects apart from the contents of the document. *Doe*, 465 U.S. at 613, 104 S.Ct. at 1242. As the Court noted in *Fisher*, 425 U.S. at 410–411, 96 S.Ct. at 1581:

> Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States*, 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225] (1957).... The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

As a result of the explicit factual finding of the District Court in *Doe* that the act of producing the documents would involve testimonial self-incrimination, and the government's failure to grant Cates use immunity pursuant to 18 U.S.C. §§ 6002 [7] and 6003 [8]

---

**7.** 18 U.S.C. § 6002 provides:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

**8.** 18 U.S.C. § 6003 provides:

(a) In the case of any individual who has been or may be called to testify or provide other

with respect to the potentially incriminating evidence, the Supreme Court in *Doe* concluded that the act of producing the documents at issue was privileged.

This Court reaches the same result. If Cates were compelled to produce the summoned documents, the testimonial impact of such production would amount to an admission of the existence of the documents and the possession or control by Cates. *See Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581. The production of a copy of Cates' 1040 forms would, for example, be evidence that Cates possessed and failed to file a tax return for the years in question. Producing copies of W–2 forms would be evidence of evasion as he would be acknowledging the existence and possession of such information from which he should have determined his tax liability. Deposit slips may well be similarly incriminating. In other words, the compelled production of the documents sought would be evidence of Cates' knowledge of his income and failure to report and pay taxes on the same. Accordingly, the Fifth Amendment privilege was properly asserted by Cates in response to the document requests made by Walling at her first meeting with Cates. Moreover, if the mere production of documents is privileged, clearly, Cates was privileged from answering any of the questions concerning his income, assets or business.

The government cites four cases in support of its position, which considered similar issues to the ones decided today, but concluded that the individual taxpayers were not protected by the Fifth Amendment privilege against selfincrimination. The Court does not find the reasoning in this line of cases to be persuasive. Three of the decisions were argued in the Ninth Circuit and each was decided prior to the Supreme Court's decision in *Doe,* two being decided on the same day. *Edwards v. Commissioner of Internal Revenue,* 680 F.2d 1268 (9th Cir.1982); *United States v. Carlson,* 617 F.2d 518 (9th Cir.), *cert. denied,* 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed. 2d 468 (1980); *United States v. Neff,* 615 F.2d 1235 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). While the fourth case was decided after *Doe,* the Court does not find the reasoning to be persuasive, especially in light of the fact that the court makes no mention of the Supreme Court's recent decision on this issue and merely affirmed the lower court's determination that the Fifth Amendment claim was without merit as there was no evidence that the taxpayer was the subject of a criminal investigation. *United States v. Reis,* 765 F.2d 1094 (11th Cir.1985). In sum, the Court finds these cases to be contrary to the weight of authority and unpersuasive.

Accordingly, the Court concludes that both the responses to the questions asked and the production of the documents requested pursuant to the summons are privileged, and cannot be compelled absent the grant of use immunity under 18 U.S.C. §§ 6002 and 6003. The Petition to Enforce Internal Revenue Service Summonses, filed on behalf of the Internal Revenue Service, is dismissed.

---

information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subseclon (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.