## Cincinnati v. Bawtenheimer
*[Cite as 7 AOA 2]*

Case No. C-890609
Hamilton County, (1st)
Decided September 26, 1990

*Richard A. Castellini, City Solicitor, and Frank H. Prouty, Esq., Room 200, 230 East Ninth Street, Cincinnati, Ohio 45202, for Plaintiff-Appellant.*

*Ralph Bawtenheimer, 201 Dorsey Street, Cincinnati, Ohio 45210, in propria persona.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Municipal Court, the transcript of the proceedings, and the briefs. The court has sua sponte removed the case from the accelerated calendar.

The city's sole assignment of error is that the trial court erred in granting the defendant-appellee's motion to dismiss the charge alleging that he violated Cincinnati Municipal Code Section 311-99(e), which makes it a first-degree misdemeanor for a person to refuse to permit the tax commissioner, or the agents of that office, to examine his or her books, records, capers and federal tax returns. The basis of the charge against the defendant-appellee was his refusal to comply with a subpoena duces tecum from the tax commissioner requiring him to produce certain documents for inspection.[1] The stated ground for his refusal was the Fifth Amendment's protection against self-incrimination. The trial court, expressly relying upon *United States v. Cates* (1988), 686 F. Supp. 1185, dismissed the charge. We affirm.

The United States Supreme Court has previously determined that a person may assert his Fifth Amendment privilege with respect to any "official question put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley* (1973), 414 U.S. 70, 77, 94 S. Ct. 316, 322; see *Kastigar v. United States* (1972), 406 U.S. 441, 444, 92 S. Ct. 1653, 1656; *McCarthy v. Arndstein* (1924), 266 U.S. 39, 40, 45 S. Ct 16, 17. It is beyond cavil that, although civil in nature to begin with, tax investigations such as the one initiated herein against the defendant-appellee can, and, in fact, often do, lead to criminal charges for failure to report and pay tax. This fact has often been judicially recognized. See, *e.g., Mathis v. United States* (1968), 391 U.S. 1, 4, 88 S. Ct. 1503, 1505; *Cates, supra,* at 1188-89.

Furthermore, the United States Supreme Court has made clear that a person who asserts his Fifth Amendment privilege cannot be com-

pelled to produce a document when the act of production would have "testimonial aspects and an incriminating effect." *United States v. Doe*, 465 U.S. 605, 611, 104 S. Ct. 1237, 1242. This is true notwithstanding the fact that the contents of the document are not privileged. *Id.* In *Doe* for example, the Court refused to disturb the lower court's holding that compliance with a series of subpoenas requesting business records in a grand-jury investigation would have required testimonial self-incrimination. *Id.* The rationale of the lower court, which the Supreme Court-accepted, was that production of the documents in compliance with the subpoenas would have been tantamount to compelled testimony by the respondent that such documents existed, that they were in the respondent's possession, and that the respondent had knowledge of them -- all of which could have been potentially incriminating in a future criminal proceeding. *Id.*

The Supreme Court made expressly clear that Doe, because of the posture of the issues on appeal, was concerned with "only business documents and records not required by law to be kept or disclosed to a public agency." *Id.* at 608, fn. 3, 109 S. Ct. at 1239, fn. 3. However, the federal district court in *Cates, supra*, was faced squarely with the issue of whether 1040 forms, W-2 forms, Forms 1099, employee's earning statements, and records of deposit subpoenaed in a civil tax investigation "fell into the categories of documents for which the act of production may be privileged" under *Doe*. The court in *Cates* held that they did, reasoning:

"If Cates were compelled to produce the summoned documents, the testimonial impact of such production would amount to an admission of the existence of the documents and their possession or control by Cates. See *Fisher*, 452 U.S. at 410. The production of a copy of Cates' 1040 forms would, for example, be evidence that Cates possessed and failed to file a tax return for the years in question. Producing copies of W-2 forms would be evidence of evasion as he would be acknowledging the existence and possession of such information from which he should have determined his tax liability. Deposit slips may well be similarly incriminating. In other words, the compelled production of the documents sought would be evidence of Cates' knowledge of his income and failure to report and pay taxes on the same. Accordingly, the Fifth Amendment privilege was properly asserted by Cates." *Id.* at 1193.

We are unable to find, and the city has not cited to us, any case which reaches a contrary result on this issue taking into consideration the Supreme Court's decision in Doe. As we find Gates persuasive on this issue, we adopt its reasoning in the instant case and conclude that the documents subpoenaed herein "fell into the categories of documents for which the act of production may be privileged" by the Fifth Amendment.

It should be noted that the Supreme Court in Doe indicated that the government is not entirely foreclosed from compelling production of documents falling within these categories. The Court stated that the government could rebut an assertion of Fifth Amendment privilege by producing evidence that it was a "foregone conclusion" that the documents were in existence and in the possession of the respondent. *Doe*, supra at 615, fn. 13, 104 S. Ct. 1243, fn. 13. From this language we infer that had this record demonstrated conclusively that the defendant-appellee was in possession of the documents requested, then any tacit admission inherent in the act of actually producing the documents would not have posed the "substantial" and "real" risk of incrimination necessary to invoke the protection of the Fifth Amendment. See *Marchetti v. United States* (1968), 390 U.S. 39, 88 S. Ct. 697. In the case *sub judice*, however, the record consists essentially of the subpoena and the criminal charge. Therefore we cannot say that either the existence of the documents subpoenaed or their possession by the defendant-appellee was a "foregone conclusion."

We conclude, therefore, that the Fifth Amendment privilege was available to the defendant-appellee with regard to the subpoena's request for him to produce certain documents. Moreover, we reject the city's contention that the defendant-appellee's assertion of the privilege was ineffectual since it was done on the basis of a blanket refusal, rather than in response to a request for specific documents as is required. See *United States v. Allee* (C.A. 1, 1989), 888 F.2d 208. The record fails to establish that any further requests or questions were put to the defendant-appellee after he appeared before the tax examiner and expressed his intent to assert his Fifth Amendment privilege against self-incrimination in the absence of a grant of immunity. We therefore perceive no basis for requiring the defendant-appellee to have done any more than he did. Moreover, we

note that on this record it appears that the government never sought to enforce its subpoena by a contempt proceeding, a process which may have forced the defendant-appellee into a more careful statement of his position, but, rather, chose to proceed directly to the filing of a criminal charge.

For the foregoing reasons, the judgment of the trial court is affirmed.

DOAN, P.J., KLUSMEIER and GORMAN, JJ.

---

[1] The subpoena specifically requested copies of the defendantappellee's federal tax returns for the years 1983 through 1987; copies of his W-2 forms "and/or" 1099 forms for 1983 through 1987; and copies of his earnings records for 1988.