THE STATE OF OHIO, APPELLEE, *v.* PRATO, APPELLANT.*

---
*There are 13 other cases with 13 other defendants, who are appellants herein, involved in these appeals.

(Nos. 4497, 4498, 4499, 4500, 4501, 4505, 4506, 4507, 4508, 4509, 4510, 4511, 4512 and 4513—Decided April 27, 1965.)

APPEALS: Court of Appeals for Mahoning County.

Mr. *Clyde W. Osborne,* prosecuting attorney, and Mr. *Elwyn V. Jenkins,* for appellee.
Mr. *Edward L. Williams,* Mr. *Jack W. Nybell,* Mr. *Harold Stein,* Mr. *Lawrence V. Cregan,* Mr. *Avetis G. Darvanan,* Mr. *Joseph E. Vouros,* Mr. *Eugene Fox* and Mr. *Joseph E. O'Neill,* for appellants.

JOHNSON, P. J. In this opinion the appellants will be referred to in the singular and the facts relative to case No. 4497 detailed.

This is an appeal on questions of law from a finding of contempt of court by the appellant for failure to answer questions propounded by the grand jury, which questions, upon application to the trial court, were found to be proper.

The facts in substance are as follows: Appellant, in answer to a subpoena issued by the September 1963 Term of the Mahoning County Grand Jury, appeared before the grand jury which was in the process of conducting an investigation into alleged gambling activities in the county. At the time of his appearance, the grand jury was not acting under any formal complaint or charge against the appellant but rather was proceeding on its own initiative to make the inquiry.

A series of questions, part of which is hereinafter set out, was asked of the appellant, the questions being generally di-

rected to his knowledge and possible participation in the gambling activities being investigated.

The appellant refused to answer the questions propounded on the constitutional grounds that the same were self-incriminating, and he invoked the right granted under the Constitution of the state of Ohio and the Constitution of the United States not to be a witness against himself.

The foreman of the grand jury requested the prosecuting attorney to present a written list of the questions to the trial court, in accordance with Section 2939.14, Revised Code, for a determination as to the propriety of the questions being asked. After having decided the list of questions was proper, the trial judge advised the grand jury of his decision.

The appellant was again taken before the grand jury and again refused to answer the questions.

Upon his second refusal to answer the questions of the grand jury, the appellant was again taken before the trial judge. The court then proceeded to read each of the questions which had been asked by the grand jury. The appellant answered the question as to his marital status and thereafter, in reply to each question propounded, he gave the following answer:

"I refuse to answer on the grounds it might incriminate me under the United States Constitution and Ohio Constitution."

Preliminary to asking the questions, the court advised the appellant of its ruling in the following language:

"The Court: All right. Now I am going to ask you some questions, and these questions are the same questions that were asked of you in the grand jury. And I want you to know that I think these questions are proper questions and that they should be answered and they require you're [sic] answering. That if you don't answer them—and that your reason for refusing to answer is not a valid reason and is not any excuse for answering them, because if you do not answer these questions as I propound them to you, you will be guilty of contempt of this court, and punishment to be meted out, being for the court's consideration."

Having completed its reading of the questions and gotten a refusal on each question save one, the trial court proceeded as follows, according to the bill of exceptions:

"The Court: Well Mr. Prato, it is the judgment of the

court that these questions are proper and I must insist that you answer them now. Are you now refusing to answer them for the reason that you have been using? A. I refuse to answer on the grounds it might incriminate me under the United States Constitution and Ohio Constitution.

"The Court: It is the order of this court that you, having refused to answer the questions that I have propounded, that you be taken from here to the county jail and incarcerated until such time as you shall purge yourself of the contempt, or otherwise be released as provided by law."

From this order and subsequent journal entry as to same, predicated on Sections 2705.01, 2939.14 and 2939.15, Revised Code, an appeal was taken to this court.

On hearing the appeal, this court journalized its entry in pertinent part as follows:

"* * * the court directs that the coercive order of confinement be dismissed, not because the appellant has purged himself of contempt, but because such order was self limiting and self-terminating, it having been made to secure the testimony of appellant before the September Term of the Mahoning County Grand Jury which has been discharged; and it is the court's further order that the case be and the same is hereby remanded to the Court of Common Pleas of Mahoning County for formal entry of discharge and for further proceedings pursuant to law."

Upon remand, a complaint was filed by the prosecuting attorney in accordance with the provisions of Sections 2705.02 and 2705.03, Revised Code, charging appellant with direct contempt of court for his failure to answer the questions propounded by the grand jury. A show cause order was issued on the complaint and, on appearance with counsel, the appellant was found in contempt of court, given a five day jail sentence and a fine of $250. From this order, appellant prosecutes a second appeal.

The appellant assigns, among others, the following errors:

"1. The trial court erred in pronouncing sentence without separating the questions posed to the defendant as set forth in 'defendant-appellant's Exhibit A' and eliminating those which might be of an incriminating nature, or which might tend to incriminate this defendant, or form a link in a chain of evidence

against this defendant from those questions which could lead to prosecution.''

''2. The court erred in pronouncing sentence inasmuch as the immunity purportedly granted to defendant would not adequately protect him, inasmuch as the character of the offenses to which certain of the questions set forth in state's exhibit A had been changed to felonies and the defendant was not granted immunity from prosecution under the provisions of Revised Code, Section 2945.44.''

Preliminary to an analysis of the assigned errors, it should be pointed out that the trial court can use coercion and punishment in its contempt order at the same time. *State* v. *Mirman*, 99 Ohio App. 382. Or they may be applied successively, by the court imposing first the coercive remedy and then the punitive remedy. *United States* v. *Collins*, 146 F. 553.

In the absence of a clear abuse of discretion, a court can properly mete out such penalty as it deems necessary in dealing with acts which are contumacious.

As previously stated by this court in its opinion by France, J., in the prior appeal filed herein applicable to this and other appellants, *State* v. *Granchay*, 1 Ohio App. 2d 307, at 310:

''* * * For where the commitment is coercive, so long as even one question is proper and answer to it is refused the commitment itself is valid. *In re Martin*, 141 Ohio St. 87. * * *''

The question arises whether *punishment* can now be imposed for the same contumacious acts when the coercive order has failed by reason of the discharge of the grand jury.

At the show cause hearing, the appellant was not given an opportunity to answer the questions which he had previously refused to answer. Nor did the trial judge make any attempt to separate the incriminating questions from those which would not be incriminating. The judge's oral pronouncement indicates that some of the questions were incriminating. Notwithstanding this finding, the court sentenced the appellant to a term of five days in jail and a fine of $250.00. As has been pointed out by the Supreme Court in *Hebebrand* v. *State,* 129 Ohio St. 574, at 581:

''* * * If some of the questions were harmless and others self-incriminating, they should have been separated by the trial court, and the witness ordered to answer the non-incriminating

but not to answer the incriminating questions found in the series of questions presented to the judge. * * *''

The state takes the position that the appellant has no excuse for failing to answer the majority of questions, harmless in character, and because of this failure he was guilty of contempt. Further, his acts in failing to answer the incriminating questions are contumacious in light of the immunities offered. If the immunities granted under the applicable statutes are total, the state's position has the ring of validity.

It must be pointed out, however, that the ruling in the *Hebebrand case* is meant to apply only to those instances where the immunity bath was *not complete*. The necessity for separation would be eliminated if the immunity were coextensive with the constitutional privilege. See *State* v. *Morgan,* 164 Ohio St. 529. Then, all questions would have been proper by reason of the immunities granted, and a failure to answer would have been a contempt of court.

On the other hand, if the immunities were not coextensive with the constitutional privilege, a court, in ordering answers to a series of questions, some of which were incriminating and others of which are not, must separate the incriminating from the nonincriminating and, upon refusal to answer the nonincriminating questions, the witness could properly be found in contempt.

An order directed generally to *all* the questions is erroneous, and the witness with less than total immunity cannot be found in contempt for failure to answer. See *Hebebrand* v. *State,* 129 Ohio St. 574, paragraph four of the syllabus.

If prosecution and penalty are outlawed by the immunity statute, society should be entitled to a full and complete disclosure, so that the ends of society in its attempt to weed out corruption could be met. All citizens have an obligation to contribute to the desires of society to uphold law and order. The vast majority recognize this obligation. The purpose of the immunity statutes is to force upon the recalcitrant their responsibility, willingly or otherwise. The protections of the state and federal Constitutions are directed to the individual's right not to be forced to testify against himself. But the Supreme Courts of Ohio and of the United States have long held

that this protection is superseded by a properly-granted immunity. The constitutional guarantee is not meant as a shield for third persons but as a guarantee to the individual alone. And when the interest of justice and society demand it, the individual given complete immunity can be properly found in contempt for failure to answer even incriminating questions.

Too often it is obvious that the claim of constitutional protection is made to shield others and not the individual, but this is difficult to prove. With a reckless and calculated disregard of all obligations to society and his duties thereto, a witness asserts the claim and goes unpunished.

As has been said by the Supreme Court of Ohio in *State* v. *Morgan,* 164 Ohio St. 529, in paragraph five of the syllabus:

"Where there is statutory immunity granted the witness, which affords him as much protection against self-incrimination as that to which he is entitled by the constitutional provision against self-incrimination, there devolves upon the witness a clear duty to give his testimony free of a refusal to answer based upon the rule of privilege arising from the constitutional provision; and the protection against self-incrimination afforded by the Constitution is not abrogated in any manner by a statute setting out a penalty for a breach of this duty."

It being apparent that the testimony of the witness must be forthcoming under a proper immunity statute, an analysis of the questions asked in relation to the applicable immunity statutes is now in order. The refusal to answer each of the following questions was predicated on both the state and federal constitutional privileges:

"Q. Having gone over the immunity section with you, I will now ask you whether you have ever permitted a game to be played for gain upon a gaming device or machine in your house, or in any outhouse, booth, or any other structure, in your care and possession?"

"Q. Having advised you of your immunity in that regard, I will now ask you whether you engage in gambling for a livelihood?"

"Q. Having advised you of the immunity law covering the questions I am about to ask you, I will now ask you whether you now or ever have been the keeper of a tavern or other house of

public resort wherein you permitted or are now permitting a game for a wager to be played in that building or tavern or place adjacent or attached to it?''

''Q. Having explained to you the immunity bath statute in bribery cases, Mr. Prato, my question is have you ever paid any money or given anything of value to any public official—and by public official I mean a mayor, a councilman, a sheriff, a prosecuting attorney, a police officer, a member of any legislature, or any person in the public employment—for the reason or for the purpose of influencing that person in the performance of his duties?''

The immunity statute as to bribery (Section 2917.04, Revised Code) is as follows:

''Whoever violates Sections 2917.01 and 2917.03 of the Revised Code, is a competent witness against another person so offending and, on the recommendation of the prosecuting attorney and approval of the court, may be compelled to attend and testify in the same manner as any other person is in any court of record in any criminal proceeding prosecuted by the Attorney General or any prosecuting attorney, for the violation of said sections, but no individual shall be prosecuted or subjected to any penalty for or on account of any transaction, matter, or thing concerning which he testifies or produces evidence, documentary or otherwise, before any such court or grand jury.''

The recommendation of the prosecuting attorney and the approval of the court are nowhere apparent in the records.

The immunities granted by the above quoted section are not self-executing. Neither a referral of the witness to the statutes nor a reading of the applicable statutes is sufficient to confer immunity. The record must disclose a *recommendation* of the prosecuting attorney and an *approval of the court*. The witness must be made aware of both conditions before he may be found in contempt for failure to answer interrogatories relative to bribery.

Further, the immunity as to bribery applies solely to one who *violates* Sections 2917.01 and 2917.03, Revised Code. A *violator* can be compelled to attend and testify in any *court of record* in any *criminal proceeding* prosecuted by the Attorney General or any prosecuting attorney.

The immunity is not available to a *witness* who appears

before a *grand jury* in an *ex parte* proceeding, which is the legal status of the appellant herein.

Even assuming the procedure as to the purported immunity was correct, in answering the bribery questions the appellant was afforded no protection which could compel the waiver of his constitutional guarantees under the Constitutions of Ohio and of the United States.

On the other hand, the immunities conferred by Section 2945.44, Revised Code, are, by the testimony of the witness, self-executing. His appearance and testimony before the grand jury invokes the immunities conferred, as to all facts tending to incriminate him. No other procedure is necessary, though it might be the better practice in a contempt hearing for the trial court to advise the witness of his immunities in open court so that the record would clearly demonstrate his awareness of the immunities available.

The error in the proceedings, as claimed in the second assignment, arises out of the fact that the purported immunity granted under Section 2945.44, Revised Code, applies to misdemeanors only, yet answers to the incriminating questions clearly could lead to a prosecution for felonies. This contention is well founded. In 1961 the Ohio Legislature chose to amend many of the criminal statutes relative to gambling. (See Sections 2915.09, 2915.10, and 2915.12 [129 Ohio Laws 1409, 1410, 1513].) Prior to the amendment, the offense was a misdemeanor, thereafter a felony. In addition, new statutes were enacted (see Sections 2915.111, 2915.121 and 2915.122, Revised Code [129 Ohio Laws 1409]), violation of which is a felony.

Nor is the failure of the immunity bath confined to the limitation as to misdemeanors. For the privilege against self-incrimination is not limited to the answers to the questions themselves but, as has been said in *Malloy* v. *Hogan, Sheriff,* — U. S. —, 12 L. Ed. 2d 653, in the L. Ed. 2d headnotes:

"The privilege against self-incrimination not only extends to answers that would in themselves support a conviction, but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute."

The immunity available to the appellant was not so broad as to come within the rule of *State* v. *Morgan,* 164 Ohio St. 529, and therefore is not sufficient to deny to the appellant his right

to invoke the constitutional guarantee against self-incrimination granted by Section 10, Article I of the Constitution of Ohio.

By virtue of recent pronouncements of the United States Supreme Court (*Murphy* v. *Waterfront Commission of New York Harbor,* — U. S. —, 12 L. Ed. 2d 678), it is now abundantly clear that a complete immunity granted by a state statute can require testimony of a reluctant witness.

It is further clear that if the state immunity is coextensive, the witness is precluded from invoking the Fifth Amendment of the federal Constitution as distinct from the constitutional guarantees of the Constitution of the state of Ohio, for state immunity now carries over to prosecution for federal offenses which could be instituted as a result of the information gained from the testimony before a state tribunal.

In the *Murphy case* the Supreme Court further held, as epitomized in paragraph seven of the L. Ed. 2d headnotes:

"Neither the testimony of a state witness compelled under state immunity law and incriminating under federal law nor the fruits of such testimony can be used by the federal government in investigating and prosecuting crime."

And, as follows in paragraph nine of such headnotes:

"A witness in a state investigation of crime who, under state law, is granted immunity from prosecution may be *compelled* to answer questions incriminating under federal law, the federal government being prohibited from making any use of such testimony or its fruit in a federal prosecution." (Emphasis added.)

The effective use of the immunity statutes requires a bath coextensive with the penalties which can be imposed under the penal statutes to which they apply. The Legislature has limited the immunity in Section 2945.44, Revised Code, to misdemeanors only, and change can come only by legislative enactment and not by judicial fiat.

For the reasons stated, the judgments of the trial court in this case (4497) and cases numbered 4498, 4499, 4500, 4501, 4505, 4506, 4507, 4508, 4509, 4510, 4511, 4512, and 4513, are reversed, and the appellants herein are discharged.

*Judgments reversed.*

Jones and Lynch, JJ., concur.