CITY OF CINCINNATI, APPELLANT, *v.* BAWTENHEIMER, APPELLEE.

[Cite as *Cincinnati v. Bawtenheimer* (1992), 63 Ohio St.3d 260.]

(No. 90–2315—Submitted December 11, 1991—Decided March 18, 1992.)

262

*Fay Dupuis*, City Solicitor, *Terrence R. Cosgrove*, City Prosecutor, and *Frank H. Prouty, Jr.*, for appellant.

*Ralph Bawtenheimer, pro se.*

HOLMES, J.  At the threshold of our discussion, we note for purposes of clarity that this case does not present the question of whether state and local officials may, upon following applicable procedures, obtain from the Internal Revenue Service copies of federal individual tax returns in the furtherance of state and local tax investigations.  It is clear that under federal law state and local governmental tax agencies do have the ability to obtain such records.  As a general rule, federal income tax returns and return information are confidential.  Section 6103, Title 26, U.S.Code provides in pertinent part:

"(a) General rule.

"Returns and return information shall be confidential, and *except as authorized by this title—*

"(1) no officer or employee of the United States,

"(2) no officer or employee of any State * * *

" * * * *

"shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. * * * "

A "state" is defined by subsection (b)(5)(B) of Section 6103 to include: "for purposes of subsections (a)(2), (b)(4), (d)(1), (h)(4), and (p) any municipality—

"(i) with a population in excess of 250,000 (as determined under the most recent decennial United States census data available),

"(ii) which imposes a tax on income or wages, and

"(iii) with which the Secretary (in his sole discretion) has entered into an agreement regarding disclosure." (Emphasis added.)

The key exception to the general rule of confidentiality is in Section 6103(d)(1), Title 26, U.S.Code, which provides in relevant part:

"Returns and return information * * * shall be open to inspection by, or disclosure to, any State agency * * * which is charged under the laws of such State with the responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws * * *. Such inspection shall be permitted, or such disclosure made, only upon written request by the head of such agency * * *."

A number of federal cases discuss the general purpose of Section 6103(d) as well as the conditions and procedures for the disclosure of federal tax returns.[1]  See *Smith v. United States* (C.D.Ill.1989), 703 F.Supp. 1344; *Bator v. Internal Revenue Service* (Dec. 16, 1988), D.Nev. No. CV–N–87–558–ECR, unreported, 1988 WL 150699; and *White v. Commissioner of Internal Revenue* (D.Colo.1982), 537 F.Supp. 679.

Unlike the foregoing procedure, in the case *sub judice,* we are dealing with a demand through a subpoena *duces tecum* for an individual to appear and produce certain personal tax records, papers and federal tax returns for inspection by the local taxing authorities.  This is dissimilar to the situation where the tax return is requested by the local government from the Internal Revenue Service as allowed by federal law.  The appellee, in refusing to divulge his tax records, has claimed that being required to do so against his will would violate his Fifth Amendment rights against self-incrimination.

---

1.  Cincinnati, being one of those cities above the threshold population level set forth in Section 6103, Title 26, U.S.Code, could apply for the federal income tax returns of this, as well as any other, taxpayer.

The Fifth Amendment to the United States Constitution provides in pertinent part that no person "shall be compelled in any criminal case to be a witness against himself." This protection exists primarily to "assure that an individual is not compelled to produce evidence which may later be used against him as an accused in a criminal action." *Maness v. Meyers* (1975), 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574, 585. The protection of this amendment applies in any type of proceeding, whether civil, criminal, administrative, investigatory, or adjudicatory. *Maness, supra; Lefkowitz v. Turley* (1973), 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274; *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. Further, as pointed out by the United States Court of Appeals, Fourth Circuit, in *United States v. Sharp* (C.A.4, 1990), 920 F.2d 1167, 1170, the Fifth Amendment "applies not only to evidence which may directly support a criminal conviction, but to 'information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.' " (Quoting *Maness, supra,* 419 U.S. at 461, 95 S.Ct. at 592, 42 L.Ed.2d at 585.)

The Fifth Amendment protects the person against incrimination through compelled testimony or other compelled acts having some testimonial character. The Fifth Amendment privilege is a personal one, adhering to the person, and not to the information that may tend to incriminate him or her.[2] *Couch v. United States* (1973), 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548, 554; *Fisher v. United States* (1976), 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39. The contents of tax documents in a taxpayer's possession are not protected by the Fifth Amendment, regardless of whether they may incriminate the taxpayer. However, in *United States v. John Doe* (1984), 465 U.S. 605, 612–613, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552, 560, the United States Supreme Court addressed this issue and stated:

---

2. Since the Fifth Amendment right is a personal right, an individual may not claim such privilege on behalf of a collective entity or organization of which he may be a part. Neither a partnership, a corporation, nor any other collective entity is shielded by the Fifth Amendment from the compelled production of an organization's records. *Bellis v. United States* (1974), 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678; *Curcio v. United States* (1957), 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225; and *United States v. O'Henry's Film Works, Inc.* (C.A.2, 1979), 598 F.2d 313. Moreover, federal courts have determined other instances where the Fifth Amendment privilege may not be invoked. Specifically, these courts have held that the privilege does not provide protection against production of an individual's tax records that have been turned over to a third party. For example, documents possessed by a taxpayer's accountant are not subject to the Fifth Amendment privilege, *Couch, infra; United States v. Daffin* (C.A.4, 1981), 653 F.2d 121; nor are documents prepared by the taxpayer's accountants and transferred to the attorneys in connection with an IRS investigation, *Fisher, infra.*

"Although the contents of a document may not be privileged, the act of producing the document may be. [*Fisher v. United States* (1976), 425 U.S.] at 410 [96 S.Ct. at 1580–1581, 48 L.Ed.2d at 55]. A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect. As we noted in *Fisher:*

" 'Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States*, 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225, 1231] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.' *Id.* [425 U.S.] at 410 [96 S.Ct. at 1581, 48 L.Ed.2d at 56]."

Tax investigations such as the one here initiated against this appellee are civil in nature. However, it is well recognized that they can and often do lead to criminal charges for failure to report and pay taxes. *United States v. Cates* (D.Md.1988), 686 F.Supp. 1185; *Mathis v. United States* (1968), 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381; see *Couch v. United States, supra;* and *Fisher v. United States, supra.*

The federal district court in *Cates, supra,* was faced squarely with the issue of whether 1040 forms, W–2 forms, 1099 forms, employee's earning statements, and records of deposit subpoenaed in a civil tax investigation fell "into the categories of documents for which the act of production may be privileged" under *Doe. Id.* at 1191. The court in *Cates* held that production of the tax records was privileged, reasoning:

" * * * If Cates were compelled to produce the summoned documents, the testimonial impact of such production would amount to an admission of the existence of the documents and the possession or control by Cates. *See Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581 [48 L.Ed.2d at 56]. The production of a copy of Cates' 1040 forms would, for example, be evidence that Cates possessed and failed to file a tax return for the years in question. Producing copies of W–2 forms would be evidence of evasion as he would be acknowledging the existence and possession of such information from which he should have determined his tax liability. Deposit slips may well be similarly incriminating. In other words, the compelled production of the documents sought would be evidence of Cates' knowledge of his income and failure to report and

pay taxes on the same. Accordingly, the Fifth Amendment privilege was properly asserted by Cates * * *. * * * " *Id.* at 1193.

As stated previously, the Fifth Amendment's protection against self-incrimination applies to any type of proceeding whether civil, criminal, administrative, investigatory or adjudicatory. *Mathis, supra; Maness v. Meyers, supra.* And it applies not only to evidence which may directly support a criminal conviction, but also to information which may furnish a link in the chain of evidence that could lead to prosecution, *Hoffman v. United States* (1951), 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. Thus, the privilege has been found to apply in IRS investigations of civil tax liability due to the potential that such investigations have for leading to criminal prosecutions. *Mathis, supra; Cates, supra; United States v. Sharp, supra.*

The privilege against self-incrimination may not be invoked merely by asserting that the information sought by the government may in a general sense be incriminatory. Whether there is a sufficient hazard of incrimination is a question for the court which is asked to enforce the privilege. *Sharp, supra,* at 1170; *Hoffman, supra.*

In the present case the trial judge, Mark P. Painter, reviewed the facts before him, and the applicable law of *United States v. Cates, supra,* and commented:

" * * * The government claimed that Cates' fear of incrimination was purely speculative, since the tax investigation was civil in nature and had as its sole purpose the acquisition of information to determine civil tax liability. This same argument was made by the prosecution in our case. 'Indeed, the purpose may at this point be just that, but, as courts have recognized, routine tax investigations frequently lead to criminal prosecutions.' *Cates, supra.* Obviously, the foregoing is true, but here, in addition, the city seeks to prosecute the defendant in a criminal matter simply for failure to comply with the summons. It is axiomatic that a prosecution could be instituted based on the information sought from the defendant, for violation of various tax laws."

Here, the trial court was determining whether the production of appellee's tax records presented a significant hazard of incrimination that would involve the Fifth Amendment privilege. The trial court determined that such a hazard was present. At least one federal appellate court has addressed the question of whether certain information is so incriminating in nature as to invoke the privilege against self-incrimination. The court in *United States v. Sharp, supra,* set forth the inquiry as follows:

"In making this determination, a court asks essentially two things. The first is whether the information is incriminating in nature. This may appear in either of two ways. It may be evident on its face, in light of the question

asked and the circumstances of its asking. * * * If it is so facially evident, that ends this inquiry. If it is not, the person asserting the privilege may yet demonstrate its incriminating potential by further contextual proof. * * *

"If the incriminating nature of the information is established by either route, there remains the question whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection. As to this, the proper test simply assesses the objective reasonableness of the target's claimed apprehension of prosecution. * * * " (Citations omitted.) *Id.* at 1170–1171.

Reasonably applying the above standards in this case, the trial court could have lawfully found, as it did, that although the taxpayer was involved in a civil proceeding, the information obtained by forcing him to produce certain tax records would more than likely have resulted in some type of criminal filing against him for not reporting and paying his income tax. The connecting links in the prosecutorial chain were clear in that there were no immunities available to the taxpayer upon providing the subpoenaed tax information.

The city of Cincinnati, or other cities which desire the production of tax records, books and tax returns of its citizens, are not precluded from doing so. As stated above, municipalities may proceed pursuant to Section 6103(d), Title 26, U.S.Code. Also, as noted by the court of appeals here, the city did not seek to enforce its subpoena by a civil contempt proceeding which may have forced the appellee into a more careful statement of his position. Instead the city chose to proceed directly to the filing of a criminal charge.[3]

---

3. Although immunity under R.C. 2945.44 applies before common pleas courts, there is nothing to prevent municipalities from enacting similar provisions to be used before their administrative boards or commissions. For example, in *State v. DePaola* (Sept. 15, 1982), Lorain App. No. 3306, unreported, 1982 WL 2761, the dispute centered on whether an Amherst city ordinance provided the city's mayor with transactional or use immunity for testimony before the Amherst City Council Finance Committee. The *DePaola* court held that the ordinance provided use immunity as opposed to the transactional immunity afforded by R.C. 2945.44. The court discussed the distinctions between the two types of immunities as follows:

"Transactional immunity is that immunity which protects a witness from prosecution when he gives compelled testimony which may be incriminating. Use immunity allows the witness to be prosecuted but prohibits any testimony given by the witness to be used against him in the subsequent prosecution.

" * * * Under R.C. 2945.44 full transactional immunity is granted only when the witness is compelled to testify over his claim of Fifth Amendment privilege. However, * * * [where use immunity is provided] the witness is not compelled to testify over a claim of privilege. It has been held that when a statute [or ordinance] does not grant a witness complete immunity he may invoke his Fifth Amendment right against self-incrimination. *Hebebrand v. State* (1935), 129 Ohio St. 574 [196 N.E. 412], Syl. 4; and *State v. Prato* (1965), 2 Ohio App.2d 115 [31 O.O.2d 197, 206 N.E.2d 917]; 25 Ohio Jurisprudence 3d 648, Criminal Law, Section 363. * * * " *Id.* at 2.

Accordingly, for all the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

---

If the city in the case *sub judice* had granted transactional (or possibly derivative use) immunity to appellee, it could have availed itself of the tax materials requested and the taxpayer would not have been under a threat of criminal charges as a consequence of providing such materials. See, generally, *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212.