T.C. Memo. 1998-460


UNITED STATES TAX COURT


GHALARDI INCOME TAX EDUCATION FOUNDATION, Petitioner
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

WILLIAM S. WEBBER, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 24817-96, 24826-96.  Filed December 30, 1998.


    Donald S. Fletcher (trustee), for petitioner
foundation.

    William S. Webber, Jr., pro se.

    <u>Lloyd T. Silberzweig</u> and <u>Andrew P. Crousore</u>, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

    WHALEN, <u>Judge</u>:  Respondent determined the following
deficiency in and penalty with respect to the Federal

income tax of petitioner Ghalardi Income Tax Education Foundation:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1993 | $14,334   | $2,866               |

Unless stated otherwise, all section references are to the Internal Revenue Code as in effect for the years in issue. Respondent also determined the following deficiencies in, addition to, and penalties with respect to the Federal income tax of William S. Webber, Jr.:

| Year | Deficiency | Penalty Sec. 6662 | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|-------------------|----------------------------------|
| 1992 | $19,404   | $3,881            | -0-                              |
| 1993 | 27,426    | 5,485             | $1,371                           |

These cases were consolidated for trial, briefing, and opinion by order of the Court issued pursuant to Rule 141(a) of the Tax Court Rules of Practice and Procedure. In this opinion all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision in this case is whether respondent properly determined the subject tax deficiencies, penalties, and addition to tax.

FINDINGS OF FACT

Mr. Webber filed Forms 1040, U.S. Individual Income Tax Return, for 1992 and 1993. On each return, Mr. Webber

reported that he was employed as a "Tax Consultant" trading under the name "Bill's Business Service". Attached to each return is Schedule C, Profit or Loss From Business, with respect to Mr. Webber's tax consulting business. Set out below is a summary of the income and expenses reported on the Schedule C filed by Mr. Webber for 1992 and 1993:

| | | 1992 | | 1993 |
|---|---|---|---|---|
| Gross receipts | | $31,546 | | $28,039 |
| Cost of goods sold | | 168 | | 7,383 |
| Gross Income | | 31,378 | | 20,656 |
| Advertising | $212 | | -0- | |
| Car and truck expenses | 5,618 | | $3,521 | |
| Commissions and fees | 2,446 | | -0- | |
| Insurance | 200 | | -0- | |
| Interest: | | | | |
| a Mortgage (paid to banks, etc.) | | | | |
| b Other | 68 | | -0- | |
| Legal and professional services | 600 | | 541 | |
| Office expense | 1,928 | | 1,485 | |
| Rent or lease: | | | | |
| a Vehicles, machinery, and equipment | | | | |
| b Other business property | 120 | | 132 | |
| Repairs and maintenance | 970 | | 154 | |
| Supplies | 4,493 | | 3,264 | |
| Taxes and licenses | 75 | | -0- | |
| Travel, meals, and entertainment: | | | | |
| a Travel | 442 | | 137 | |
| b Meals and entertainment | $6,574 | | $926 | |
| c Enter 20% of line b | 1,315 | | 185 | |
| d Subtract line c from b | 5,259 | | 741 | |
| Utilities | 1,836 | | 2,865 | |
| Other expenses: | | | | |
| Bank charges | 144 | | 36 | |
| Postage | 578 | | -0- | |
| Continuing education | -0- | | 453 | |
| Contributions | -0- | | 125 | |
| Dues and subscriptions | -0- | | 754 | |
| | 722 | | 1,368 | |
| Total expenses | | 24,989 | | 14,208 |
| Net profit (loss) | | 6,389 | | 6,448 |

During the years in issue, Mr. Webber maintained a bank account with First Interstate Bank under the name Bill Webber d/b/a Bill's Business Service. He also maintained two accounts with the Santa Cruz Community Credit Union under the same name. Set forth below is a summary of the aggregate deposits made into Mr. Webber's three accounts, the amount of cash received at the time the deposits were made, the gross receipts reported on Mr. Webber's Schedules C, and the unreported income determined by respondent:

| Bank | 1992 | 1993 |
|------|------|------|
| First Interstate Bank | $31,036.82 | $24,995.26 |
| Cash received | 9,450.00 | 6,350.00 |
| Santa Cruz Community Credit Union, #1 | 943.50 | 1,508.33 |
| Santa Cruz Community Credit Union, #2 | 20,709.74 | 14,858.33 |
| Aggregate deposits and cash received | 62,140.06 | 47,711.92 |
| Less gross receipts reported | 31,546.00 | 28,039.00 |
| Unreported income | 30,594.06 | 19,672.92 |

On or about January 2, 1991, Mr. Webber caused a declaration of trust to be executed entitled the Ghalardi Income Tax Education Foundation "A Trust", herein referred to as Ghalardi. Pursuant to the declaration of trust, Ms. Lillian Girarde, the sister of Mr. Webber's grandmother, purportedly created an irrevocable trust:

TO PROVIDE for the administration of the assets by natural or corporate persons acting in a fiduciary capacity to preserve, conserve, maintain, invest, and develop the assets for the benefit of the certificate holders and in a manner designated in this instrument.

The declaration of trust states that the certificates of interest of the trust are divided into 100 units or parts, and it describes the certificates of interest as follows:

CERTIFICATES OF INTEREST

THE CERTIFICATES of interest of this trust, as a convenience and for purposes of distributions, are divided into one hundred (100) units or parts thereof.  They are non-assessable, non-taxable and non-negotiable.  No certificate holder may transfer any unit of interest to anyone else, without the approval of at least one other certificate holder of the trust other than the person to whom the units of interest are being transferred.  When a transfer of units of interest is made by a sole certificate holder, or one of only two certificate holders to the other certificate holder, the transfer must be approved by an independent trustee.  Ownership of a certificate, and the units represented thereby, shall not entitle the holder to any legal title in or to the trust property, nor any say or power in the management thereof.

NO INTEREST of any certificate holder shall be subject to or liable for attachment, execution, or other processes of law.  No certificate holder shall have the right to encumber, hypothecate, or alienate his interest in this trust in any manner, without the written approval of an adverse party.

- 6 -

IF ANY CERTIFICATE holder of this trust shall
contest in any court the validity of this trust
or in any manner [sic] to nullify or set aside
this trust or any of its provisions, then the
interest of that certificate holder shall cease
and that person's interest shall be divided up
among the other certificate holders pro-rata.
The trustees are authorized to defend, at the
expense of the trust, any kind of contest or
attack by a certificate holder or any other
person against the trust or against any of its
provisions.

THE NAME OF EACH certificate holder of this trust
must be recorded by the trust record keeper in
the trust records.  Any third party may rely
upon that certified list (Attachment "C") in all
transactions with the trustees or in behalf of
the trust, and that list is intended to represent
a clear and definite means for the ascertainment
of the certificate holders of this trust.

According to Schedule C, CERTIFIED LIST OF CERTIFICATE
HOLDERS, attached to the declaration of trust, all
certificates of interest in Ghalardi are owned by
Isaac Hull Holding Co.  The record of this case does
not describe this entity or state who owns this entity.

The declaration of trust sets forth the following
standard governing distributions by the trust:

ASCERTAINABLE STANDARD FOR DISTRIBUTION

THE TRUSTEES may accumulate for or distribute
to any certificate holder such portions of
the income or corpus of the trust as the
trustees deem necessary for the support, care,
maintenance, education, medical expenses or
emergencies of the certificate holders.  No
distribution from the trust shall be made
except in conformity with this external

ascertainable standard, except on a pro-
rata basis of the certificate holders.

THE TRUSTEES shall have power to distribute
principal and/or income to the certificate
holders, or to make decisions or distributions
of the trust estate in whole or in part, for
delivery or transfer to the certificate holders
of any part or any portion thereof, at such
valuation as is established by the trustees to
be the fair value of the part or portion, or
the trustees may convert the trust estate or
any portion thereof into cash and distribute
the net proceeds to the certificate holders.

According to Schedule B of the declaration of trust,
Ms. Girarde contributed the following personal property
to the trust:  Tools, checking and savings accounts,
furniture, fixtures, and others as per the inventory.
There is no evidence, however, that Ms. Girarde contributed
any property to the trust in January 1991 or at any other
time.

The declaration of trust purports to have been
executed by two trustees, Ms. Judie Dew and Mr. Don
Fredrickson.  Both individuals have personal relation-
ships with Mr. Webber, and neither of them exercised any
independent judgment or control with respect to Ghalardi
or any of the assets allegedly held by or on behalf of
Ghalardi.

On or about January 5, 1993, Mr. Webber opened a
checking account at First Interstate Bank with an initial

deposit of $1,550.  This account purported to be in the name of Ghalardi Income Tax Education Foundation.  This account was closed several months later because the bank determined that it did "not meet our bank's guidelines for a Trust account."  During the time it was open, deposits in the aggregate amount of $11,875 were made to the account.

On or about May 26, 1993, Mr. Webber opened another account under the name Ghalardi Income Tax Education Foundation at the Coast Commercial Bank in Santa Cruz, California.  The signature card for the account is signed by Mr. Webber as manager and by Ms. Dew and Mr. Fredrickson, who purport to be acting as trustees of Ghalardi.  During 1993, aggregate deposits of $23,805 were made to this account.

Set out below is a list of the dates and amounts of the deposits made to the First Interstate Bank and the Coast Commercial Bank accounts that were opened by Mr. Webber under the name Ghalardi Income Tax Education Foundation:

| Date | First Interstate Bank | Coast Commercial Bank | Total |
|---|---|---|---|
| 01/05/93 | $1,550 | -- | |
| 01/26/93 | 3,675 | -- | |
| 02/02/93 | 1,100 | -- | |
| 03/09/93 | 1,000 | -- | |
| 03/31/93 | 1,725 | -- | |
| 04/09/93 | 825 | -- | |
| 04/14/93 | 750 | -- | |
| 05/05/93 | 1,250 | -- | |
| 05/27/93 | -- | $1,650 | |
| 05/28/93 | -- | 500 | |
| 07/02/93 | -- | 1,750 | |
| 08/06/93 | -- | 2,700 | |
| 09/01/93 | -- | 3,200 | |
| 10/01/93 | -- | 2,310 | |
| 10/06/93 | -- | 1,125 | |
| 10/18/93 | -- | 1,075 | |
| 11/04/93 | -- | 2,250 | |
| 11/29/93 | -- | 3,800 | |
| 12/09/93 | -- | 625 | |
| 12/21/93 | -- | 1,500 | |
| 12/23/93 | -- | 1,320 | |
| | 11,875 | 23,805 | $35,680 |

The parties have stipulated that aggregate deposits of $23,655 were made during 1993 to the Coast Commercial Bank account.  This is $150 less than the aggregate deposits reflected on the statements for that account, as shown above.  We shall use the amount stipulated by the parties. The parties have also stipulated that $2,900 of cash was received by petitioner in connection with the above deposits to the Coast Commercial Bank account.  Thus, petitioner made aggregate deposits during 1993 of $35,530 and received an additional $2,900 in cash, for a total of $38,430.  The record of this case does not establish the source of any of these funds.  Mr. Webber used those funds as his own.

During the years in issue, Mr. Webber exercised complete and unfettered control over the moneys on deposit in the above accounts under the name Ghalardi Income Tax Education Foundation.

Ghalardi filed a return for calendar year 1993 on Form 1041, U.S. Fiduciary Income Tax Return. As part of the return, there is a Schedule C, Profit or Loss From Business, which purports to be from a business described as Consultant/Education that was operated under the name G.I.T.E.F. The receipts and expenses reported on Schedule C for this alleged business are as follows:

| | | | |
|---|---|---|---|
| Gross receipts | | | $22,845 |
| Car and truck expenses | | $3,415 | |
| Rent or lease | | | |
|   Vehicles, machinery & equipment | | 822 | |
|   Other business property | | 7,000 | |
| Supplies | | 5,741 | |
| Travel, meals, & entertainment | | | |
|   Travel | | 534 | |
| Utilities | | 688 | |
| Other Expenses | | | |
|   Service charges | $990 | | |
|   Freight | 19 | | |
|   Team building | 113 | | |
|   Bank charges | 101 | | |
|   Conventions, seminars | 2,391 | | |
|   Dues, publications | 943 | | |
|   Parking | 10 | | |
|   Samples, displays | 89 | | |
|   Contract labor | 725 | | |
|   Total other expenses | | 5,381 | |
|   Total expenses | | | 23,581 |
| Net profit or (loss) | | | (736) |

Respondent made three adjustments in the notice of deficiency issued to Ghalardi. First, respondent

determined that Ghalardi had received unreported income during 1993 in the amount of $15,585, the excess of the sum of the total deposits to Ghalardi's bank accounts and cash received, $38,430, over the gross receipts reported on Ghalardi's Schedule C, $22,845.  Second, respondent determined that Ghalardi is entitled to none of the expenses claimed as deductions on its Schedule C for 1993 because Ghalardi did not establish that it was engaged in a trade or business, that the amounts were paid, or that they constituted allowable deductions.  Finally, respondent determined Ghalardi's liability for the accuracy-related penalty imposed under section 6662(a) for negligence or disregard of rules or regulations or, in the alternative, for substantial understatement of income tax.

Respondent made seven adjustments in the notice of deficiency issued to Mr. Webber.  First, respondent increased Mr. Webber's taxable income for 1992 and 1993 in the amount by which the total deposits to Mr. Webber's bank accounts and cash received exceed the gross receipts reported on Mr. Webber's Schedules C as follows:

|  | 1992 | 1993 |
|---|---|---|
| Total deposits and cash received | $62,140.06 | $47,711.92 |
| Less gross receipts reported | 31,546.00 | 28,039.00 |
| Unreported income | 30,594.06 | 19,672.92 |

Second, respondent disallowed the cost of goods sold claimed on the Schedules C for Mr. Webber's tax consulting business in the amount of $168 in 1992 and $7,383 in 1993. Third, respondent disallowed the expenses claimed on the Schedules C, $24,989 in 1992 and $14,208 in 1993, on the ground that Mr. Webber had not substantiated any of these expenses. Fourth, respondent increased Mr. Webber's taxable income by Ghalardi's gross receipts for 1993, $38,430. The notice of deficiency sets forth the following explanation of this adjustment:

> It has been determined that Ghalardi ITEF
> operates as an agent of William S. Webber.
> Income from Ghalardi ITEF is being reassigned to
> William S. Webber in the amount indicated below
> [i.e., $38,430].

Fifth, respondent decreased Mr. Webber's taxable income by one-half of the additional self-employment tax determined for the year, $3,821 for 1992 and $4,269 for 1993.

Sixth, respondent determined that Mr. Webber is liable for the addition to tax under section 6651(a)(1) for failure to file Mr. Webber's 1993 return on or before Monday, October 17, 1994, the due date including extensions. Finally, respondent determined that Mr. Webber is liable for the accuracy-related penalty under section 6662(a) for 1992 and 1993 on the ground that the under-

payment of tax for each year was due to negligence, a substantial understatement of tax, or a substantial valuation misstatement.

After respondent issued the subject notice of deficiency to Mr. Webber and after Mr. Webber had filed the instant petition in this Court, he sent to respondent a second Form 1040 for both 1992 and 1993 on which he shows zero taxable income and claims a refund of the tax paid for both years. Attached to each of those documents is a statement signed by Mr. Webber. The document attached to Mr. Webber's 1992 "amended return" states as follows:

> I, William Spencer Webber, Jr., am submitting this as part of my 1992 income tax return. I am filing this return in response to the Informal Request for Admissions concerning docketed case no. 24826-96. I am filing this corrected return in order to adjust the voluntary over reporting of taxable income on my original return for the tax year 1992, which was shown in ignorance of the laws and regulations and without this document having been submitted.
>
> In addition to the above, I am filing the corrected return even though the "Privacy Act Notice" as contained in a 1040 booklet clearly informs me that I am not required to file any return such as the one I filed in 1992 and which I am now amending based upon the laws and regulations of the Internal Revenue Code. It does so in at least two (2) places:
>
> A.   In one place it states that I need only file a return for "any tax" for which I may be liable. Since no Code Section makes me "liable" for income taxes, this provision notifies me that I do

not have to file an income tax return, which I did in ignorance in 1992.

B.  In another place it direct [sic] me to Code Section 6001.  This section provides, in relevant part, that "whenever in the judgement of the Secretary it is necessary, he may require any person by notice served upon such person, or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title."  Since the Secretary of the Treasury did not "serve" me with any such "notice" and since no legislative regulation exists requiring anyone to file an income tax return, I am again informed by the "Privacy Act Notice" that I am not required to file an income tax return.

Even though I know that no section of the Internal Revenue Code:

1.  Establishes an income tax "liability" as, for example, Code Sections 4401, 5005, & 5703 do with respect to wagering, alcohol & tobacco taxes;

2.  Provides that income taxes "have to be paid on the basis of a return" as, for example, Code Sections 4374, 4401(c), 5061(a), & 5703(b) do with respect to other taxes

In addition:

3.  26 CFR 602.101 does not list a 1040 (OMB#1545-0074) as even being applicable to the income tax imposed in Section 1 of the Code.  This regulation refers the public to a document carrying OMB#1545-0067, which is for reporting "Foreign Earned Income." Since I had no foreign earned income to report, there seems to be no other

document or return that 26 CFR 602.101 makes applicable to the income tax imposed in Section 1 of the Internal Revenue Code.

4. Sections 6103(h) & 6103(l) provide that all return information can be used against me to determine and impose both criminal and civil fines and penalties. Therefore, I do not see how any [sic] can compel me to provide information to the government that can be used against me in this manner, consistent with my Fifth Amendment right not to be compelled to be a witness against myself. Fifth Amendment protection applies to any proceeding, civil or criminal, adminis-trative or judicial, and may be invoked in connection with federal income taxes. See U.S. v. Argomaniz, 925 F.2d 1349 (11th Cir. 1991); Cincinnati v. Bawtenheimer, 63 Ohio St. 3d, p.260.

5. With respect to the information I have included in my return, I wish to point out that the courts have ruled that: "A (1040) form with 'zeros' inserted in the space provided * * * qualified as a return." See U.S. v. Long, 618 F.2d 74 (9th Cir. 1980), U.S. v. Kimball, 896 F.2d 1218 (9th Cir. 1990), U.S. v. Moore, 627 F.2d 830 (7th Cir. 1980), and a Las Vegas bankruptcy court held that "Zeroes entered on a Form 1040 constitutes a return."" [sic] See Cross v. U.S., 91-2 USTC p.50, 318; Bankr.L.Rep. p. 7404.

6. It is also noted that I had "zero" income according to the Supreme Court's definition of income,[1] since in Merchant's Loan & Trust Co. v. Smietanka, 225 U.S. 509 (at pages 518 & 519) the court held that, "The word (income) must be given the same meaning in all of the Income Tax Acts of Congress that was given to it in the

Corporation Excise Tax Act of 1909." Therefore, since I had no earnings in 1992 that would have been taxable as "income" under the Corporation Excise Tax Act of 1909, I can only swear to having "zero" income in 1992. Obviously, since I know the legal definition of "income," if I were to swear to having received any other amount of "income," I would be committing perjury under both 18 U.S.C. 1621 and U.S.C. 7206. Thus, not wishing to commit perjury under either statute, I can only swear to have "zero" income for 1992.

7. Please note that my 1992 return also con-stitutes a claim for refund pursuant to IRCode § 6402.

8. I am also putting IRS on notice that my corrected 1992 tax return and claim for refund does not constitute a "frivolous" return pursuant to IRCode § 6702. My amended return and claim for refund is based on 9 court decisions, 9 Internal Revenue Code sections, 3 Privacy Act Notice provisions and numerous other references. As such, it can not [sic] be termed "frivolous" on any basis as that term is defined and understood. In addition, my return is not designed to "delay or impede the administration of Federal Income Tax laws," since it is designed to be my final statement under those "laws." Further, no IRS employee has any delegated authority to impose a "frivolous" penalty, or is there any legislative regulation implementing IRCode § 6702; thus the statute is benign.

9. Finally, I shall hold any and all IRS employees who disregard the statutes, court decisions, Privacy Act Notice provisions and other references contained in this document accountable

pursuant to 26 U.S.C. 7214 and 18
U.S.C. 241.  Section 7214 makes it a
crime for IRS agents to seek to extract
"other or greater sums than authorized
by law" and to engage in "extortion and
willful oppression under color of law."
To the extent that IRS employees
capriciously, wantonly, and arbitrarily
disregard the court decisions,
statutes, and other references con-
tained in this document, they will be
in criminal violation of these statutes
and are, accordingly, being put on such
notice.

Signed  <u>William S. Webber, Jr.</u>  Date <u>September 3, 1997</u>
        William S. Webber, Jr.

[1]The word "income" is not defined in the
Internal Revenue Code (<u>See U.S. v. Ballard</u>, 535
F.2d 400, 404).  But, as stated above, it can
only be a derivative of corporate activity.
The Supreme Court has held this numerous times.
"Whatever difficulty there may be about a precise
and scientific definition of 'income' it imports,
as used here * * * the idea of gain or increase
arising from corporate activities."  See <u>Doyle
v. Mitchell</u>, 247 U.S. 179.  "Certainly the term
'income' has no broader meaning in the 1913 Act
than in that of 1909 (See <u>Stratton's Independence
v. Howbert</u>, 231 U.S. 399, 416, 417), and we
assume that there is no difference in its meaning
as used in the two acts."  <u>Southern Pacific Co.
v. John Z. Lowe, Jr.</u>, 247 U.S. 330, 335.

The document attached to Mr. Webber's 1993 "amended return"

is virtually identical to the above.

OPINION

Petitioners make eight frivolous contentions in their

posttrial briefs.  First, petitioners allege that the

expenses disallowed by respondent are "ordinary and

necessary expenses" incurred during the taxable year in carrying on their trades or businesses and are deductible under section 162. Respondent disallowed all the expenses claimed on the Schedules C filed by Ghalardi and Mr. Webber, as well as the cost of goods sold claimed on Mr. Webber's Schedule C, because petitioners neither substantiated any of the amounts claimed nor showed that the expenses or costs of goods sold were allowable. Petitioners' contention is frivolous because, at trial, they introduced no testimony or documents to substantiate any of the expenses or costs of goods sold claimed by either petitioner.

Second, petitioners assert that the notices of deficiency issued to them are not reflected in a computer summary of their accounts, designated the "Individual Master File Tax Module", for 1992 or 1993. Petitioners introduced a copy of the computer summary of Mr. Webber's account for 1992 and 1993, but they did not introduce a computer summary of Ghalardi's account. Based upon the computer summary of Mr. Webber's account, petitioners argue "that there has never been an official filing of a notice of deficiency for either year" and that the subject "Notices of Deficiency are invalid and fraudulent." Petitioners cite no authority for their contention.

Third, petitioners argue that "even if the deficiency notices sent by IRS were valid, any additional assessments that they would have created would be invalid." According to Mr. Webber, this is true because respondent "has no delegated authority to prepare returns for Petitioner and, therefore, no legal deficiency notices are possible in the instant case where Petitioner did not self-assess himself."

Fourth, petitioners argue that "any returns provided by Respondent that were prepared by a revenue officer in the San Jose office of Internal Revenue will not conform to 26 USC 6065 because such returns are not authorized by law nor are they affirmed under penalties of perjury." Similarly, petitioners argue that respondent's agent violated the law "by failing to provide a lawful signature on his information reports" as required by section 6065. Petitioners charge that, by completing the statements of income tax examination changes that are attached to the notices of deficiency and by filing those statements as "substitute returns" for petitioners under section 6020(b), respondent's agent has "made an attempt to extort sums" from petitioners in violation of section 7214.

Fifth, petitioners assert that under our system of taxation, "the only way Internal Revenue can legally collect an income tax from an individual citizen * * *

is if the individual voluntarily files a form 1040, self assesses an amount of tax, and then does not pay." Petitioners assert that "there is no section in the Internal Revenue Code which establishes an income tax liability".

Sixth, petitioners assert that the meaning of the term "gross income" for purposes of the Internal Revenue Code "means 'gains and profits' derived from corporate activities". In responding to a request for admissions from respondent, Mr. Webber employed this meaning of the word "income". For example, Mr. Webber denied that "nontaxable income" was deposited into certain checking accounts because, according to him, "the word 'income' infers corporate profit and I had no corporation, therefore, I had no 'income.'"

Seventh, petitioners complain about the bias exhibited by both respondent's agent and the Court. For example, petitioners make the following complaint:

> The Judge has surrendered the position of indifference and supported Internal Revenue in these cases. Judge Whalen was witnessed by at least two people in the course of preparing to hear this matter to have referred to Petitioner Webber as a "tax protestor." Although this accusation was denied by the Judge on the record, witnesses could collaborate [sic] the expressed bias. Throughout the trail [sic] Judge Whalen held contempt for the Pro per litigant by demanding a presence and a knowledge of procedure

that would be expected ONLY of an accredited officer of the Court.  The deportment of the Judge in this hearing surely violated the Maxim of Jurisprudence noted in CIV § 3512, which states, "One must not change his purpose to the injury of another."

Finally, Mr. Webber contends that he filed his 1993 return on October 17, 1994, which was timely because October 15, 1994, fell on Saturday.  The notice of deficiency states that Mr. Webber's return was filed on October 19, 1994.  This contention is frivolous because Mr. Webber introduced no evidence regarding the manner in which his 1993 return was filed or the date on which such filing took place.  Accordingly, there is no basis in the record to overturn respondent's determination on this point.

Each of the contentions raised by petitioners is frivolous or groundless and none of them merit discussion. See Wilcox v. Commissioner, 848 F.2d 1007, 1008 (9th Cir. 1988) (stating that paying taxes is not voluntary), affg. T.C. Memo. 1987-225; Carter v. Commissioner, 784 F.2d 1006, 1009 (9th Cir. 1986) (rejecting taxpayer's argument that the income tax is voluntary); Abrams v. Commissioner, 82 T.C. 403, 407 (1984) (stating that gross income under section 61 means all income from whatever source derived); Rowlee v. Commissioner, 80 T.C. 1111, 1116-1117, 1120

(1983) (rejecting taxpayer's assertion that he is not a "person liable" for tax and the taxpayer's allegations of bias); Stone v. Commissioner, T.C. Memo. 1998-314 (stating that section 6065 applies to returns and other documents filed with Commissioner but does not apply to notices of deficiency); Janus v. Commissioner, T.C. Memo. 1996-195 (finding that forms included in the notices of deficiency detailing the adjustments made by Commissioner did not serve as substitute returns under section 6020 and that nothing in the Internal Revenue Code requires the Secretary to file a return pursuant to section 6020 before assessing a deficiency); Hill v. Commissioner, T.C. Memo. 1992-140 (describing taxpayer's assertion that he owes no income tax in the absence of a voluntary self-assessment as an "outdated protester-type argument"); Lewis v. Commissioner, T.C. Memo. 1992-76 (dismissing taxpayers' arguments that tax system is voluntary and that self-assessment is required before a notice of deficiency can be issued as "stale tax protester contentions"); Ebert v. Commissioner, T.C. Memo. 1991-629 (rejecting taxpayer's assertion that there is no section of the Internal Revenue Code that makes taxpayer liable for the taxes claimed), affd. without published opinion 986 F.2d 1427 (10th Cir. 1993); Rice v. Commissioner, T.C. Memo. 1978-334 (stating that

- 23 -

the allegation that the conduct of agents of the Internal Revenue Service in issuing the notice of deficiency violates section 7214 is a matter over which the Tax Court has no jurisdiction); Spencer v. Commissioner, T.C. Memo. 1977-145 (stating that section 6065 does not require notices of deficiency issued by Commissioner to be signed under penalties of perjury).  In view of the fact that all of petitioners' arguments are frivolous or groundless, we will require Mr. Webber to pay to the United States a penalty pursuant to section 6673(a) in the amount of $10,000.

Furthermore, Mr. Webber presented no evidence at trial and made no argument in his posttrial briefs regarding respondent's determination of the addition to tax under section 6651(a)(1) and the penalty under section 6662(a).  Accordingly, we hereby sustain those determinations.

Notwithstanding petitioners' failure to raise an issue that merits discussion, we must address the notice of deficiency issued to Ghalardi.  Respondent argues that Ghalardi was a sham devised by Mr. Webber in an attempt to shift income to Ghalardi.  There is ample evidence to support that contention and no evidence to contradict it. For example, we have found that Mr. Webber formed Ghalardi

and exercised full and complete control over all of Ghalardi's assets. There is no evidence in this case that Ghalardi had any role or economic purpose other than to shift income from Mr. Webber and tax avoidance. We find that Mr. Webber stood in the same position with respect to the assets allegedly held by Ghalardi after its formation as before. See Zmuda v. Commissioner, 79 T.C. 714, 721 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Professional Servs. v. Commissioner, 79 T.C. 888, 925 (1982). Mr. Webber was free to deal with Ghalardi's assets without restraint and, as a matter of economic reality, there was no separation of legal title from beneficial enjoyment and, hence, Ghalardi was a nullity. See Markosian v. Commissioner, 73 T.C. 1235, 1244-1245 (1980); Dahlstrom v. Commissioner, T.C. Memo. 1991-265, affd. without published opinion 999 F.2d 1579 (5th Cir. 1993). Accordingly, we agree with respondent that Ghalardi is a sham for Federal income tax purposes. Thus, we sustain the adjustment to Mr. Webber's 1993 return in which respondent increased Mr. Webber's taxable income by the amount of Ghalardi's gross income for the year. The notice of deficiency issued to Ghalardi which appears to have been in the nature of a protective notice of deficiency, is hereby disapproved. See Professional

Servs. v. Commissioner, supra; Tatum v. Commissioner, T.C. Memo. 1988-579, affd. without published opinion 886 F.2d 1313 (5th Cir. 1989).

In the case at docket No. 24817-96, decision will be entered for petitioner.

In the case at docket No. 24826-96, decision will be entered for respondent.