[Cite as *Sojic v. Karp*, 2015-Ohio-3692.]


**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

RUZA SOJIC, et al.                          :
                                            :
        Plaintiffs-Appellees                :       C.A. CASE NO. 26664
                                            :
v.                                          :       T.C. NO. 14CV155
                                            :
JOSHUA KARP, et al.                         :       (Civil Appeal from
                                            :        Common Pleas Court)
        Defendant-Appellant                 :
                                            :

· · · · · · · · · · ·

**O P I N I O N**

Rendered on the 11th day of September, 2015.

· · · · · · · · · ·

JAMIE R. LEBOVITZ, Atty. Reg. No. 0025000 and JORDAN D. LEBOVITZ, Atty. Reg. No. 0091247 and KATHLEEN J. ST. JOHN, Atty. Reg. No. 0031238, 1370 Ontario Avenue, Suite 100, Cleveland, Ohio 44113
        Attorneys for Plaintiffs-Appellees

ROBERT W. HOJNOSKI, Atty. Reg. No. 0070062 and RICK L. WEIL, Atty. Reg. No. 0069431, 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202
        Attorneys for Defendant-Appellant

· · · · · · · · · · · ·


FROELICH, P.J.

**{¶ 1}** Joshua Karp appeals from an order of the Montgomery County Court of Common Pleas, which granted in part the Plaintiffs' motion to compel Karp to answer deposition questions. For the following reasons, the trial court's judgment will be affirmed.

### I. Background and Procedural History

**{¶ 2}** On December 8, 2013, Goren Sojic, an independent owner-operator truck driver, stopped at the Love's Travel Stop located at 2217 South Edwin C. Moses Boulevard in Dayton, Ohio. Joseph Karp was employed at Love's Travel Stop as a security guard. At some point after Sojic entered the store, Karp drew his firearm and shot Sojic in the arm and chest. The circumstances of the shooting are in dispute. Sojic was transported to the hospital, where he died from the gunshot wounds. After an investigation by the Dayton police, a Montgomery County grand jury entered a no true bill, declining to indict Karp for the shooting.

**{¶ 3}** Plaintiffs (the administrator of Sojic's estate and his heirs) brought suit against Karp, Aron Security (dba Arrow Security), Love's Travel Stops and County Stores (dba Love's Travel Stops), and Chainstair Security, Inc., alleging claims of assault and battery (Karp), respondeat superior liability for assault and battery (Aron, Love's and Chainstar), negligent hiring, training, retention, and supervision (Aron, Love's, and Chainstar), negligence (Love's), negligence (Aron and Chainstar), wrongful death, and survivorship.

**{¶ 4}** On January 14, 2015, Plaintiffs took the deposition of Karp. After answering questions regarding his name, counsel, and whether any medications would

prevent his testifying truthfully, Karp asserted his Fifth Amendment privilege against self-incrimination in response to all other questions posed by Plaintiffs' counsel.

{¶ 5} On March 2, 2015, Plaintiffs filed a motion to compel Karp to answer the deposition questions. Plaintiffs stated:

[M]ost of the questions to which Mr. Karp pled the Fifth Amendment privilege involve general background information about Mr. Karp and his family, Mr. Karp's employment history as a security guard, his qualifications for being a security guard, his job training as a security guard, his work uniform and apparel, or questions related to medical authorizations and interrogatories Mr. Karp answered. None of these questions relate directly or indirectly to the December 8, 2013 shooting; nor do they require an incriminating response from Mr. Karp. These questions are relevant not only to plaintiffs' claims against Mr. Karp, but also to plaintiffs' claims for negligent hiring and retention against his employers. As such, Mr. Karp should be compelled to re-appear and answer these questions.

{¶ 6} Karp responded that Plaintiffs had received extensive information about the shooting, including all of the evidence gathered by the Dayton Police Department in connection with its investigation. In addition, Karp stated that he and other defendants had responded to Plaintiffs' discovery requests, and Plaintiffs had conducted several depositions of other individuals. Karp argued that Plaintiffs' motion to compel should be denied, because Plaintiffs failed to comply with Civ.R. 37 and local rules in filing the motion to compel, most of the questions did not have "anything to do with" liability, and the sought-after information was available from other sources.

{¶ 7} Plaintiffs filed a reply memorandum, which included a "certificate of impasse," pursuant to Montgomery Co. C.P.R. 2.09(C)(1).

{¶ 8} On March 26, 2015, the trial court sustained in part and overruled in part Plaintiffs' motion to compel. Addressing Karp's procedural argument, the trial court found that Plaintiffs complied with Civ.R. 37(E) and Montgomery Co. C.P.R. 2.09(C)(1)(a) and (b) by providing the trial court with a certificate of impasse attached to their reply memorandum. Turning to the merits of the motion, the trial court found that Karp properly asserted his Fifth Amendment privilege and would not be compelled to answer the following questions:

1. Are you presently armed as we sit here in this room?

2. Prior to the deposition today, did you have any discussions about the December 8, 2013 incident with any family members of yours?

3. Prior to the deposition today, did you have any conversations with any friends or colleagues about the shooting on December 8, 2013?

4. Prior to your deposition today, did you have a discussion with Darryl Johnson?

5. Were you prescribed or under the influence of any prescription medication prescribed by a physician on December 8, 2013. * * * (Mr. Karp is compelled to answer whether he was prescribed or under the influence of any prescription medication prescribed by a physician prior to December 8, 2013.)

{¶ 9} As to the remaining deposition questions, the trial court found that Karp did not establish a "real danger" of incrimination if he were compelled to answer. The court

noted that the remaining questions related to "either background information or to Plaintiffs' claims against Mr. Karp of assault and battery and willful, wanton, and reckless conduct and claims against the remaining defendants for negligent hiring, negligent retention, and negligent training." The court ordered Karp to answer all remaining questions asked at the January 14 deposition that had not been previously addressed by the court.

{¶ 10} Karp appeals from the trial court's March 26, 2015 order, raising two assignments of error.

## II. Procedural Requirements for Motion to Compel

{¶ 11} Karp's first assignment of error states:

THE TRIAL COURT IMPROPERLY CONSIDERED PLAINTIFFS' MOTION

TO COMPEL, WHICH WAS FILED IN VIOLATION OF CIVIL RULE 37 AND

LOCAL RULE 2.09.

{¶ 12} Civ.R. 37 provides remedies when an opposing party fails to cooperate with discovery and authorizes the filing of a motion to compel discovery. Civ.R. 37(E) requires the aggrieved party to make a reasonable effort to resolve the matter through discussion with the attorney, unrepresented party, or person from whom discovery is sought prior to filing a motion to compel. A motion to compel "shall be accompanied by a statement reciting the efforts made to resolve the matter." Civ.R. 37(E).

{¶ 13} Local Rule 2.09(B) of the Montgomery County Court of Common Pleas, General Division, requires parties to discuss any impasse concerning a discovery request and states that no "Formal Discovery Request," such as a motion to compel, may be filed with the trial court until a "diligent effort has been made to resolve the impasse" without

court involvement. Mont. Co. C.P.R. 2.09(B)(3), (4). A "certificate of impasse," stating the specific times and methods of attempted informal resolution of any impasse, was required to be affixed to or made part of any "Formal Discovery Request." Mont. Co. C.P.R. 2.09(C)(1)(a), (b).

{¶ 14} Plaintiffs attached to their motion to compel a complete transcript of Karp's deposition, demonstrating that Karp globally asserted his Fifth Amendment right against self-incrimination. Plaintiffs did not attach to their motion a statement reciting efforts made to resolve the matter, as required by both Civ.R. 37(E) and Mont. Co. C.P.R. 2.09(B).

{¶ 15} After Karp opposed the motion to compel based, in part, on Plaintiffs' failure to comply with Civ.R. 37(E) and Mont. Co. C.P.R. 2.09(B), Plaintiffs attached a certificate of impasse to their reply memorandum. The certificate of impasse stated that on December 9, 2014, Karp's attorney served responses to Plaintiffs' first request for admissions indicating that Karp was asserting his Fifth Amendment rights with respect to the questions raised therein. Karp's counsel also sent Plaintiffs' counsel an email stating, "In light of same, please confirm that you still plan to proceed with Mr. Karp's deposition as noticed on January 14. If so, he will appear for same, but to the best of our knowledge will invoke his Fifth Amendment privilege in response to questioning." The certificate of impasse indicated that the deposition proceeded on January 14. After answering the first several questions, Karp answered the remaining questions by asserting his Fifth Amendment privilege. Karp's criminal and civil counsel confirmed that Karp was globally asserting a Fifth Amendment privilege to questions asked of him. Plaintiffs' counsel stated in their certificate that an impasse as contemplated by

Montgomery Co. C.P.R. 2.09(B)(4) had been reached, requiring the motion to compel.

{¶ 16} Although Plaintiffs failed to attach the certificate of impasse to their motion, as opposed to their reply memorandum, we find no abuse of discretion in the trial court's decision to resolve the motion. A certificate of impasse was provided prior to the trial court's ruling, allowing the trial court to evaluate, before ruling on the motion, whether reasonable efforts had been made to resolve the conflict informally.

{¶ 17} Moreover, as we stated in *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516 (2d Dist.):

In *Studer v. Seneca Cty. Humane Soc.* (May 4, 2000), Seneca App. No. 13-99-59, 2000 WL 566738, the Third District Court of Appeals recognized that the purpose of Civ.R. 37(E) "is to endorse and enforce the view that, in general, discovery is self-regulating and should require court intervention only as a last resort." Thus, the Third District reasoned that Civ.R. 37(E) "was designed more for the benefit of the trial courts, not as an appellate obstacle." *Id.*

* * * A deficient showing under Civ.R. 37(E) certainly could justify the denial of a motion to compel. But once a trial court has gone to the trouble of conducting a hearing on a motion and issuing a decision resolving the parties' dispute, as the trial court has done in this case, we see no useful purpose in invoking Civ.R. 37(E) -- which is intended to benefit the trial court -- to reverse its judgment and force the court to begin its work again after the filing of a renewed motion to compel. Thus, we decline to find that the trial court abused its discretion in proceeding to consider the merits of [the]

motion to compel despite any potential shortcomings under Civ.R. 37(E).

*Unklesbay* at ¶ 11. *See also Nunez Vega v. Tivurcio*, 10th Dist. Franklin No. 14AP-327, 2014-Ohio-4588, ¶ 43.

{¶ 18} Karp's first assignment of error is overruled.

### III. Karp's Invocation of his Fifth Amendment Rights

{¶ 19} Karp's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING DEFENDANT KARP TO TESTIFY OVER HIS FIFTH AMENDMENT PRIVILEGE OR RISK SANCTIONS, AS ALL OR NEARLY ALL OF THE INFORMATION THAT PLAINTIFFS SEEK COULD LEAD TO POTENTIALLY INCRIMINATING EVIDENCE, IS ALREADY IN PLAINTIFF'S [SIC] POSSESSION OR IS EQUALLY AVAILABLE FROM OTHER SOURCES.

{¶ 20} In his second assignment of error, Karp claims that the trial court abused its discretion in ordering him to answer all but five deposition questions, because he properly invoked his Fifth Amendment rights as to all of the information sought. As stated above, the trial court held that Karp was not required to answer questions asking whether Karp was armed at the deposition, whether Karp had discussed the December 8 shooting with family members, friends, colleagues, or Darryl Johnson, and whether Karp was taking or prescribed medication at the time of the December 8 shooting; this aspect of the trial court's order is not before us.

{¶ 21} In general, we review a trial court's ruling on discovery matters for an abuse of discretion. *Med. Mut. Of Ohio v. Schlotterer*, 122 Ohio St.3d 181,

2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13. However, when the discovery matter concerns whether a particular statute applies, the issue is a question of law and a de novo standard applies. *Id.*; *Marcum v. Miami Valley Hosp.*, 2015-Ohio-1582, 32 N.E.3d 974, ¶ 11 (2d Dist.) (whether a privilege statute applies is a question of law, but whether specific requested records are relevant and discoverable is a question of fact).

{¶ 22} Here, we are presented with a mixed question of law and fact. Whether the Fifth Amendment applies to the circumstances before us is a question of law. However, we review the trial court's ruling compelling Karp's answers to particular questions for an abuse of discretion. *See Nedel v. Nedel*, 11th Dist. Portage No. 2007-P-0022, 2008-Ohio-1025 (because Fifth Amendment rights were not implicated, trial court did not abuse its discretion in requiring party to testify); *Ohio Bar Liab. Ins. Co. v. Silverman*, 10th Dist. Franklin No. 05AP-923, 2006-Ohio-3016, ¶ 13; *Cincinnati v. Bawtenheimer*, 63 Ohio St.3d 260, 267, 586 N.E.2d 1065 (1992) ("trial court could have lawfully found, as it did," that the information obtained by requiring production of tax records would more than likely have resulted in some type of criminal filing); *see also Amerifirst Savings Bank of Xenia v. Krup*, 136 Ohio App.3d 468, 494, 737 N.E.2d 68 (2d Dist.1999) (court did not abuse its discretion when it disallowed a waiver of defendant's Fifth Amendment rights after he invoked his Fifth Amendment privilege during his deposition).

{¶ 23} As an initial matter, Karp claims that the trial court's order requires him to disclose information that is either not relevant, has already been obtained, or is available from other sources. Karp states that the claims and defenses in this action "all reduce to one relatively simple legal question, namely whether or not Mr. Karp was justified in

defending himself against the attack by Plaintiffs' decedent." He emphasizes that Plaintiffs have already obtained voluminous discovery, including "actual police interviews of Mr. Karp, Mr. Karp's employee personnel file, numerous witness statements, the police investigatory file, surveillance video, and other information." Karp states that fourteen other depositions have been taken.

{¶ 24} Civ. R. 26(B)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." Civ. R. 26(B)(1) further provides that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

{¶ 25} We have reviewed the transcript of the January 14, 2015 deposition. Broadly stated, Plaintiffs' counsel's questions related to Karp's personal and educational background, his criminal and employment history, the individuals with whom Karp discussed the December 8 shooting, various aspects of Karp's employment as a security guard with Arrow Security, Karp's job training and any prior use of force, his prescription medication and medical records, and his interrogatory responses. Plaintiffs were entitled to ask Karp about each of these matters, and Karp was required to answer, provided that the information was not privileged. The fact that Plaintiffs may have been able to obtain the information from other sources did not affect Karp's obligation to respond to Plaintiffs' proper discovery efforts.

{¶ 26} Next, Karp claims that the trial court's decision was inconsistent, contradictory, and reflected that the trial court did not consider all of the deposition questions. A review of the trial court's decision belies Karp's claim that the trial court did

not consider all of the deposition questions. The ruling is thorough and refers to specific questions by the deposition transcript's page numbers.

{¶ 27} As for the trial court's decision being internally inconsistent, Karp cites, as an example, that he was not required to answer whether he had discussed the shooting with family members, colleagues, or Darryl Johnson, but the trial court did not exclude him from answering if he would refuse to answer any questions regarding conversations with non-Arrow employees concerning the December 8 incident. This question was distinguishable, as it asked for a yes or no answer and did not go to the substantive issue itself, namely, with whom (if anyone) did Karp discuss the December 8 shooting. In essence, the question simply asked if Karp would assert his Fifth Amendment privilege to that category of questions; the trial court reasonably determined that Karp could answer that question.

{¶ 28} Karp's principal argument is that all of the questions asked by Plaintiffs' counsel during his deposition could lead to incriminating information.

{¶ 29} The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution states: "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." Section 10, Article I, Ohio Constitution similarly provides: "No person shall be compelled, in any criminal case, to be a witness against himself." The protections of the Fifth Amendment apply in any type of proceeding – civil, criminal, administrative, investigatory, or adjudicatory -- to the extent that compelled testimony "may tend to incriminate" the witness in a future criminal proceeding. *See Bawtenheimer*, 63 Ohio St.3d at 264, 266, 586 N.E.2d 1065; *Tedeschi v. Grover*, 39 Ohio App.3d 109, 111, 529 N.E.2d 480 (10th Dist.1988). In this context, "incrimination" means not only

evidence that would directly support a criminal conviction, but "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Bawtenheimer*, 63 Ohio St.3d at 264, 266.

{¶ 30} The Fifth Amendment does not prohibit civil litigation while the possibility of criminal prosecution exists, and it "does not shield a party from appearing or defending in a civil action." *Sweet v. Hunt*, 2d Dist. Greene No. 2013 CA 37, 2014-Ohio-631, ¶ 11. Nevertheless, a trial court cannot compel a party (or a witness) to answer deposition questions over a valid assertion of his or her Fifth Amendment rights, absent a duly authorized assurance of immunity at the time. *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983).

{¶ 31} "The privilege against self-incrimination may not be invoked merely by asserting that the information sought * * * may in a general sense be incriminatory." *Bawtenheimer*, 63 Ohio St.3d at 266. In general, a witness may not make a blanket assertion of his or her Fifth Amendment privilege, and may not invoke the Fifth Amendment prior to questioning. *E.g.*, *United States v. Bates*, 552 F.3d 472, 475 (6th Cir.2009). The Fifth Amendment must be invoked on a question-by-question basis. "This presumption against blanket assertions of Fifth Amendment privilege is premised on the common sense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness invokes the privilege with 'reasonable cause.'" *Id*. at 475-76.

{¶ 32} Whether a question poses a sufficient hazard of incrimination is a matter

for the court that is asked to enforce the privilege. *Bawtenheimer*, 63 Ohio St.3d at 266. The determination involves a two-step inquiry:

> * * * The first [inquiry] is whether the information is incriminating in nature. This may appear in either of two ways. It may be evident on its face, in light of the question asked and the circumstances of its asking. * * * If it is so facially evident, that ends this inquiry. If it is not, the person asserting the privilege may yet demonstrate its incriminating potential by further contextual proof.
>
> If the incriminating nature of the information is established by either route, there remains the question whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection. As to this, the proper test simply assesses the objective reasonableness of the target's claimed apprehension of prosecution.

*Bawtenheimer* at 266-67.

{¶ 33} Stated simply, the test for whether the Fifth Amendment was properly invoked is whether the witness had "reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87.

{¶ 34} The vast majority of the Plaintiffs' questions were not directly related to the

December 8 shooting. As stated by Plaintiffs, these questions fell within several broad categories, including: (1) general personal background information about Karp and his family; (2) Karp's employment history as a security guard; (3) his qualifications to be a security guard; (4) his training as a security guard; (5) his uniform and apparel; (6) the answers to interrogatories he signed in this case, and (7) medical information.

**{¶ 35}** Karp first claims that questions regarding his identity and his fingerprints "in and of themselves could lead to an admission of Mr. Karp's identity." He argues that the "identity of the criminal defendant is the most basic element of the proof of a crime by the State."

**{¶ 36}** In order to support a conviction, the State must establish beyond a reasonable doubt the identity of the defendant *as the person who committed the offense at issue*. *E.g.*, *State v. Bland*, 7th Dist. Mahoning No. 14 MA 9, 2015-Ohio-1797, ¶ 22. At the beginning of the deposition, Karp identified himself by name, but refused to answer, on Fifth Amendment grounds, a series of questions regarding his birth date, whether he had used another name, whether he had provided fingerprints to Arrow Security, and his educational background. Karp also indicated that he would refuse to answer any questions regarding his parents' names. Plaintiffs' counsel's questions regarding Karp's identity, family, and educational background are not facially incriminating and, based on the record, we find no suggestion that information regarding Karp's identity and educational background could lead to criminal charges. The trial court reasonably ordered Karp to answer questions regarding his identity, his family, and his educational background.

**{¶ 37}** Karp also claims that Plaintiffs' counsel's questions regarding the training

and rules that he received from his co-defendants, from his present or former employers, or from the police academy could potentially lead to incriminating information. Karp specifically identifies the following series of questions as problematic:

1. Whether Mr. Karp had ever been employed as a security guard at another company. (Karp Depo. at 12)

2. Questioning regarding what training he had had with respect to being a security guard. (*Id.* at 14)

3. Whether he had received job site rules and regulations from either his employer or Co-Defendant Love's. (*Id.* at 22)

He states that these questions, although perhaps innocuous on their face, may lead to evidence that he acted with a reckless state of mind at the time of the shooting.

{¶ 38} On their face, none of the questions related to Karp's job history, training, and employment with his co-defendants and the like asked for facially incriminating information. And, reading the questions in the context of the deposition as a whole, there is nothing from which the trial court could conclude that information sought was potentially incriminating. Although the State would be required to establish Karp's mens rea in a prosecution of the December 8 shooting, information about Karp's past training and experience has no obvious bearing on Karp's state of mind at the time of the shooting.

{¶ 39} Karp further argues that answering whether he had any social media accounts could lead to information about conversations that he had with family, friends, and colleagues. Plaintiffs' counsel had asked two questions about social media: (1) "Do you have any social media accounts?" and (2) "Is it your testimony that you will refuse to answer any questions regarding social media by asserting the Fifth Amendment?"

{¶ 40} In our view, the trial court did not abuse its discretion in ordering Karp to answer these two questions regarding social media. With respect to the second question, it simply asked Karp if he was planning to assert a Fifth Amendment privilege. In essence, Karp answered the question already by answering, "I'm pleading the Fifth." As to the first question asking whether Karp had any social media accounts, the trial court could have reasonably concluded that Karp did not have reasonable cause to apprehend danger from responding directly. Given the broad definition of "social media" and the lack of specifics in the question, the trial court could have concluded that either answer (yes or no) alone would not have furnished a link in the chain of evidence against him. By ordering Karp to answer the posed questions, the trial court did not render an opinion on whether Karp could assert a Fifth Amendment privilege from answering follow-up questions that might seek information about specific accounts or account activities.

{¶ 41} Karp asserts that the trial court erred in requiring him to answer questions about medical authorizations and releases. Plaintiffs' counsel's questions asked Karp if he would refuse to sign releases and authorizations based on his Fifth Amendment rights. We find nothing incriminating in Karp's answering those questions, and his "pleading the Fifth" indirectly answered them. These questions presented a different issue than whether Karp would be required to sign releases and authorizations and respond to any document request from Plaintiffs' counsel.

{¶ 42} As for the specific questions about his medical treatment and prescription medications prior to December 8, 2013, the trial court could have reasonably concluded that the evidence would not provide incriminating evidence regarding Karp's state of mind on December 8.

**{¶ 43}** Upon review of the entire deposition transcript, we find no abuse of discretion in the trial court's order compelling Karp to answer all (except for the five questions identified in the trial court's order) deposition questions. Karp's second assignment of error is overruled.

### IV. Conclusion

**{¶ 44}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Jamie R. Lebovitz
Jordan D. Lebovitz
Kathleen J. St. John
Robert W. Hojnoski
Rick L. Weil
Hon. Michael W. Krumholtz